**Max T. MATTERN, Petitioner,**

v.

**DEPARTMENT OF THE TREASURY, Respondent.**

No. 01–3253.

United States Court of Appeals, Federal Circuit.

May 30, 2002.

---

2. The *Restatement (Second) of Agency,* § 293 (1958), recognizes that a third "party to a contract made by an agent on behalf of an disclosed or partially disclosed principal does not become liable to such principal upon it in an action at law if the principal is excluded as a party by the form or terms of the contract."

*See also id.* at § 295 (recognizing that when an obligor gives a negotiable instrument to an agent on account of a principal not named or described in the instrument, the obligor "is not liable to the principal in an action upon the instrument, unless the principal is an endorsee or otherwise becomes the holder").

Aaron M. Nisenson, Henrichsen Siegel, P.L.L.C., of Washington, DC, argued for petitioner. With him on the brief was Colleen M. Leyrer.

Bryant S. Banes, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel was Kenneth S. Kessler, Attorney.

Before MICHEL, GAJARSA, and DYK, Circuit Judges.

MICHEL, Circuit Judge.

Petitioner Max T. Mattern ("Mattern") appeals from a decision of the Merit Systems Protection Board ("Board"), 88 M.S.P.R. 65 (2001), concluding that it lacked jurisdiction to hear an enforcement petition challenging the agency's denial of back pay for the time period pre-dating the agency's adverse personnel action (removal) which was overturned. We affirm.

## BACKGROUND

Mattern, an officer employed by the Department of the Treasury United States Secret Service, Uniformed Division, arrested Branderly Reina, a juvenile charged with assault, in April 1996. Reina later alleged that during the arrest and subse-

quent processing, Mattern had slapped him and had pushed his face into the wall. An internal investigation ensued, as well as one by the United States Attorney for the District of Columbia. In the meantime, beginning November 25, 1996, Mattern was placed variously on administrative leave or restricted duty status, which prevented him from earning night differential, premium, and overtime pay. The U.S. Attorney never brought charges. The agency, however, proposed in a September 25, 1997 memorandum to remove Mattern from his position for slapping Reina and for his subsequent inability to perform the essential duties of his position.[1] By letter of December 15, 1997, the agency issued a final decision finding his removal warranted. Mattern appealed to the Board.

On June 29, 1998, the administrative judge dismissed both charges, finding that the agency had not carried its burden of proving its charges by a preponderance of the evidence. Mattern was reinstated and awarded back pay beginning December 19, 1997, the effective date of the agency's final removal decision. The agency petition for review was denied by the Board on November 12, 1998. Shortly thereafter, Mattern filed a petition for enforcement, challenging the agency's failure to pay him what he considered to be the proper amount of back pay: overtime, premium, and night differential pay for all periods before his removal during which he was placed on administrative leave or restricted duty and during the interim relief period.

On March 28, 2000, the full Board ruled that the agency's placement of Mattern on restricted duty status was "related to" the cancelled personnel action, and therefore that Mattern was entitled to the restoration of pay and benefits, including overtime, premium, and night differential pay. Relying on *Lavelle v. Dep't of the Navy*, 37 M.S.P.R. 86 (1988), the Board held that the failure to grant Mattern such overtime, premium, and night differential pay "would appear to severely undercut the make-whole remedy" of the Back Pay Act; it therefore ordered the agency to determine the amount of premium, night differential, and overtime pay, plus interest, to which Mattern was entitled for the pre-removal period from November 25, 1996, through December 18, 1997, and the interim relief period between June 29, 1998, and November 18, 1998.[2]

In response, the Director of the Office of Personnel Management ("OPM") timely exercised her statutory right to request reconsideration of the March 28, 2000 decision, which the Board granted, and then reversed itself in-part, finding that it lacked jurisdiction over any pre-removal adverse personnel actions.[3] *Mattern v. Dep't of the Treasury*, 88 M.S.P.R. 65 (2001). Specifically, the Board concluded on reconsideration that nothing in the language of the Back Pay Act "unequivocally expresses an intent to provide compensation for losses resulting from other actions" or that unequivocally expresses "an intent that the Board award such compensation based solely on the existence of a relationship such as that described in *Lavelle*." Thus, because the Board lacked jurisdiction over Mattern's placement on administrative leave or restricted duty (as it was not a removal, reduction or suspen-

---

1. According to the agency, the essential duties Mattern was unable to perform included the ability to testify effectively as a witness because of his damaged credibility.

2. The Final Decision of the Board ordering the cancellation of Mattern's removal was dated November 12, 1998. We are therefore uncertain why the Board, in its March 28, 2000 decision, granted relief up to and including November 18, 1998.

3. The Board left intact the ruling with respect to post-removal interim relief.

sion for more than 14 days and occurred before the appealable adverse employment action), the Board found that it also lacked jurisdiction to award any nighttime differential, overtime, or premium pay for that time period. In reaching this conclusion, the Board expressly overruled *Lavelle* and its progeny to the extent that they held to the contrary.

Mattern timely appealed to this court; we have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

■ We review Board decisions narrowly, only to ensure that they are not "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(2000); *Haebe v. Dep't of Justice,* 288 F.3d 1288 (Fed. Cir.2002). Here we must decide whether the Board decision that it lacked jurisdiction to award Mattern premium, overtime, or night differential pay is not in accordance with the Back Pay Act.

The Back Pay Act, codified at 5 U.S.C. § 5596, governs awards to federal employees subjected to a personnel action later found to be unjustified. When an employee is "found to have been affected by an unjustified or unwarranted *personnel action* which has resulted in the withdrawal or reduction of all or part" of his pay, he is entitled to recover:

> *[F]or the period for which the personnel action was in effect* (i) an amount equal to all of or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the peri-

od if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period ....

5 U.S.C. § 5596(b)(1)(A)(i)(2000) (emphases added). OPM, which Congress charged with promulgating regulations to carry out this section, *see id.* § 5596(c), has defined the statutory phrase "pay, allowances, or differentials" to include "pay, leave, and other monetary employment benefits to which an employee is *entitled* by statute or regulation...." 5 C.F.R. § 550.803 (2000) (emphasis added).

Mattern asserts that it is unclear whether Congress intended the statutory phrase "personnel action" to be limited solely to an adverse action appealable to the Board, and therefore that we should look to the legislative intent in enacting the Back Pay Act for guidance.[4] So directed, Mattern argues that because the Back Pay Act is a remedial statute enacted to make employees whole for any losses they suffer as a result of an unwarranted or unjustified action, it should be broadly construed to accomplish its purpose. *See Curlott v. Campbell,* 598 F.2d 1175, 1181–82 (9th Cir. 1979) ("The [Back Pay] Act operates as a waiver of sovereign immunity to provide complete monetary relief to the employees."); *see also Kerr v. Nat'l Endowment for the Arts,* 726 F.2d 730 (Fed.Cir.1984).

■ The government retorts that the Board lacks jurisdiction to remedy an agency personnel decision that is merely "related to" an appealable action. This is plainly so, the argument goes, because the Board's jurisdiction is limited by statute to removals, suspensions of more than 14 days, reductions in grade, reductions in pay, and furloughs of 30 days or less. *See* 5 U.S.C. § 7512 (2000). Irrespective of

---

4. "An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title." 5 U.S.C. § 7513(d).

whether the Back Pay Act is a remedial statute, argues the government, Congress clearly has not granted the Board authority to hear cases or award remedies for actions outside of its jurisdiction—such as Mattern's pre-removal reassignments to administrative leave or restricted duty. We agree that the Board lacks jurisdiction over this enforcement petition.

■ Mattern cannot challenge his pre-removal reassignments because they effected no reduction in grade or basic pay. "An employee's reassignment to a position that does not allow for availability pay is therefore not an appealable action because the Board has consistently held that premium pay [such as overtime or night differential] is not part of basic pay, and the loss of or reduction in premium pay, through means within the agency's discretion and not otherwise appealable to the Board, including reassignment, is not appealable as a reduction in pay." *Luciano v. Dep't of the Treasury*, 74 M.S.P.R. 441, 1997 MSPB LEXIS 530, *23 (1997), *aff'd*, 152 F.3d 948 (Fed.Cir.1998) (Table).

We recently reaffirmed this principle in *Pann v. Dep't of the Navy*, 265 F.3d 1346 (Fed.Cir.2001). The petitioner in *Pann*, a Navy diver, complained that a reassignment from "Rigger (Diver)" to "Land (Diver)" was an adverse agency action because in his new position, although at the same grade and basic pay, he was no longer entitled to special "dive pay." We upheld the Board's dismissal of his appeal because the Board lacks jurisdiction over appeals challenging an involuntary reassignment without loss in grade or basic pay that resulted in a loss of "additional pay." *Id.* at 1348. We affirm the Board here under a similar rationale: the Board lacked jurisdiction to entertain Mattern's petition for enforcement because he had no entitlement in the first place to the overtime, premium, and night differential pay he sought, so the alleged denial of the opportunity to earn such pay could not be "adverse" within the meaning of the statute.

That the present petition implicates the Back Pay Act does not remove it from the purview of *Pann* and similar precedent. Although the Back Pay Act is designed as a make-whole remedial statute, it is not without limits. *Kerr*, 726 F.2d at 733 ("The purpose of such a cancellation order [returning the employee to work with back pay] is to place the employee *as nearly as possible* in the status quo ante.") (emphasis added). Because the pre-removal placement on administrative leave or reassignment to restricted duty were not adverse actions, they are not remediable by the Board under the Back Pay Act; for example, the agency could have left Mattern in the restricted-duty position indefinitely and he still would have been without remedy before the Board. *See* 5 U.S.C. § 7512 (2000) (defining adverse actions); *Pann*, 265 F.3d at 1348–49; *cf. Phipps v. Dep't of Health & Human Serv.*, 767 F.2d 895 (Fed.Cir.1985)· (holding that returning an employee to his lower grade of pay after a 32–month "temporary promotion" was not an adverse action under § 7512(7)). As he was never entitled to premium, overtime, and night differential pay, Mattern in fact has been restored to the *status quo ante* and has been made whole "as nearly as possible."

Finally, Mattern's continued reliance on *Lavelle*, the Board decision the Board itself overturned in this very case, is unpersuasive. We would not have been bound by *Lavelle*, a Board decision, even if it had not been overruled. Moreover, as the Board in this case explained, *Lavelle* relied in part on *Summers v. United States*, 227 Ct.Cl. 353, 648 F.2d 1324 (1981), a case wherein the *reassignment itself* was deemed an adverse action. *Mattern*, 88 M.S.P.R. 65, 2001 ("The basis for the award of overtime pay in [Summers],

therefore, was not that the 'reassignment' preceded or was related to the suspension, but that it was itself an appealable adverse action for which compensation was authorized under the Back Pay Act.").

We therefore affirm the Board's dismissal of the petition for enforcement for lack of jurisdiction because, at least with respect to any pay other than basic pay, the Board's power to make an aggrieved employee whole under the Back Pay Act extends back only to the effective date of the adverse action, as defined in 5 U.S.C. § 7512.

*AFFIRM.*