# United States Court of Appeals for the Federal Circuit

05-3266


JOSEPH E. SMITH,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.


Vincent E. Polsinelli, Nixon Peabody LLP, of Albany, New York, argued for petitioner. With him on the brief was John E. Higgins.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel was J. Ellen Purcell Marchese, Attorney-Advisor, United States Department of the Army, of Watervliet, New York.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3266

JOSEPH E. SMITH,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

_____

DECIDED: August 11, 2006

_____

Before RADER, SCHALL, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST. Dissenting opinion filed by Circuit Judge RADER.

PROST, Circuit Judge.

Joseph E. Smith filed an appeal with the Merit System Protection Board ("Board") alleging a constructive suspension from a Welder position with the Department of the Army ("agency"). His appeal alleged procedural due process violations and disability discrimination. The administrative judge issued an initial decision holding there was a procedural due process violation, but no disability discrimination, and ordered the agency to reinstate Smith with back pay. Smith v. Dep't of Army, No. NY0752960278-E-1 (M.S.P.B. Apr. 3, 1997) ("1997 Decision"). The agency reinstated Smith as a

Welder but then removed him on June 19, 1997 for his physical inability to perform the duties of that position. Smith appealed the disability finding to the Equal Employment Opportunity Commission ("EEOC"), which held that the agency did engage in disability discrimination when it failed to place him in an available open position to accommodate his disability in November 1996. Smith v. White, No. 03A20073 (E.E.O.C. May 15, 2003), slip op. at 7 ("EEOC Decision"). The Board adopted the decision of the EEOC finding disability discrimination and ordered the agency to carry out the EEOC order and award back pay and benefits under the Back Pay Act. Smith v. Dep't of Army, 93 M.S.P.R. 611 (2003) ("2003 Order"). Smith filed a petition for enforcement with the Board when the agency refused to provide any relief for the discrimination beyond the date of his removal. The Board's final decision upheld a finding by the administrative judge that the agency had complied with its prior order and was not required to provide any remedy beyond the date of Smith's removal. Smith v. Dep't of Army, NY0752960278-C-1 (M.S.P.B. May 9, 2005) ("Final Order"). Because we find that Smith's removal did not in itself terminate the relief due him for the November 1996 discrimination, we vacate the Board's decision and remand for a proper determination of the relief due him under the Board's 2003 Order.

BACKGROUND

On July 13, 1995, the agency determined that Smith could not work in his position as a Welder WG-3703-10 because a disability prevented him from wearing required hearing protection. Over the next several months, Smith engaged in a prolonged process with the agency seeking to have the agency recognize his condition as an occupational injury and secure assignment to a light-duty position. Smith was

willing and able to work a light duty position that did not require the use of hearing protective equipment but was repeatedly told no such position existed. See 1997 Decision, slip op. at 3-13.

On April 4, 1996, Smith filed a "mixed case appeal" to the Board's New York regional office.[1] In his initial complaint, Smith alleged that he was constructively suspended as of July 14, 1995 due to a "series of actions and inactions resulting in a total failure on the part of the Agency to provide [him] with any consistent information about his employment status and to provide him with reasonable accommodation for his handicap and/or appropriate compensation." Statement of Appellant in Support of Appeal to M.S.P.B., at 2 (April 4, 1996). Smith alleged that these actions violated his due process rights by placing him on enforced leave for more than fourteen days without the proper procedural requirements. Id. at 4. Smith also alleged that the actions stated a claim for disability discrimination under, inter alia, the Americans with Disabilities Act ("ADA") because the agency refused to acknowledge that his disability was job-related and had refused to place him in a position accommodating his disability. Id. at 4-5.

In an initial decision, the administrative judge found that Smith had been on enforced leave for more than fourteen days beginning on July 14, 1995, conferring the Board with jurisdiction over his appeal. 1997 Decision, slip op. at 12 ("[T]he appellant's

---

[1] "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination . . . ." 29 C.F.R. § 1614.302(a)(2) (2006). Once the Board determines that the adverse agency action occurred, conferring it with jurisdiction, it may decide the merits of the discrimination claim. See Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1325 (Fed. Cir. 2006) (en banc).

absences were not voluntary and were a single, continuing action stemming from the problem relating to hearing protective equipment."). On the discrimination issue, the administrative judge held that Smith had not proven his claim because he failed to prove that a suitable position was available to accommodate his disability during the time of his involuntary suspension. Id., slip op. at 16. Regarding the due process argument however, the administrative judge agreed with Smith, finding that the agency had deprived him of required procedural protections in enacting the suspension. Id., slip op. at 14. Therefore, the administrative judge ordered the agency to cancel Smith's suspension and provide back pay from July 14, 1995, the date his suspension began. Id., slip op. at 16.

In response to this order, the agency cancelled Smith's suspension, reinstated him to his previous position as Welder WG-3703-10, and paid him back pay from July 14, 1995 through the date of his reinstatement. Shortly thereafter, on May 13, 1997, the agency proposed Smith's removal based on a permanent disability. As one basis for the removal, the agency cited Smith's inability to perform his position as a Welder WG-3703-10 because he could not wear the required hearing protection, the very disability which formed the basis of Smith's disability claim. The agency also cited the lack of any vacancy to which Smith could be reassigned. Smith's separation became effective June 19, 1997.

On April 8, 1998, Smith appealed the Board's decision that the agency's actions

did not constitute disability discrimination to the EEOC.[2]  Following proceedings lasting over six years, the EEOC disagreed with the Board's finding, concluding that the agency had indeed engaged in disability discrimination.  EEOC Decision, slip op. at 7.  The EEOC found that the position of Material Expediter WG-6910-6 became available in November 1996 and that the agency's failure to assign Smith to this position as a reasonable accommodation was discrimination in violation of the ADA.  Id. slip op. at 5-7.  Because the EEOC disagreed with the Board's finding regarding the existence of discrimination, it referred the case back to the Board for further consideration.  Id.

Thereafter, the Board concurred and adopted the EEOC's decision.  2003 Order, slip op. at 5-6 (holding that that Board could not disagree with the EEOC's finding where, as here, the EEOC's decision rested solely on an interpretation of discrimination law).  The Board ordered the agency to "carry out EEOC's decision" and to "pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act."  Id.  The agency was also ordered to notify Smith once it believed it had fully complied with the order, at which point Smith could file a petition for enforcement with the administrative judge if he believed that the agency had not fully complied.  Id., slip op. at 6.

Based on the 2003 Order, Smith sought relief from the agency.  The agency responded on August 19, 2003 that it believed it was already in full compliance with the

---

[2]    An employee may petition the EEOC to reconsider a Board decision regarding whether an adverse action was based in part on discrimination.  5 U.S.C. § 7702(b)(1) (2000).  If the EEOC grants the petition and issues a decision differing from the Board's decision, the EEOC must then refer the matter back to the Board.  Id. § 7702(b)(5)(B).  The Board must adopt the EEOC's decision unless the Board finds that, as a matter of law, the EEOC decision constitutes an incorrect application of civil service law or is unsupported by the record as a whole.  Id. § 7702(c).

order. The agency first stated that it was not required to restore Smith to the Material

Expediter WG 6910-06 position:

> The appellant separated from Federal service effective June 19, 1997. The appellant did not file an appeal or complaint regarding the separation, and now the time to pursue same has expired. Therefore the appellant's period of entitlement for restoration is from November 19, 1996 thru June 19, 1997, a period which has expired. . . . Therefore the agency's obligations as regards restoration to the position Material Expediter have been fulfilled.

The agency then stated that it had also already complied with the 2003 Order regarding

the payment of any back pay due Smith:

> The agency has complied with all back pay requirements ordered by the MSPB. . . . The case giving rise to the EEOC decision is the constructive suspension effective 13 July 1995, which was reversed by the MSPB on 3 April 1997. That decision was not appealed by the Agency, which awarded full back pay under 5 CFR [§] 550.805 for the position of Welder WG307-10.

Because the agency had already paid Smith from July 14, 1995, the date the

constructive suspension began, to June 19, 1997, the date Smith was removed from the

agency, the agency asserted that nothing more was due. Id.

Smith petitioned the Board for enforcement of its order, arguing that if the agency

had not, as the EEOC and Board concluded, discriminated by refusing to reassign him

to the open Material Expediter position in November 1996, his employment would not

have been terminated in June 1997 by reason of medical disqualification for the

Welder's position. Therefore, Smith asserted that he was entitled to compensation

under the Back Pay Act from November 19, 1996, the date of the discrimination,

through at least December 3, 2000, the date that the agency claims the Material

Expediter position was abolished due to a reduction-in-force.

The administrative judge denied Smith's petition for enforcement holding that Smith was not entitled to compensation after June 19, 1997, the effective date of his removal. Smith v. Dep't of Army, NY0752960278-C-1, slip. op. at 4 (M.S.P.B. Jan. 12, 2004) ("2004 Decision"). The administrative judge stated that providing relief beyond the date of removal would permit the appellant to "use enforcement proceedings to obtain relief as to a separate non-adjudicated agency action," i.e., his unappealed removal. Id. Because the agency had paid Smith compensation through his removal date, the administrative judge reasoned, no further relief was due. Id., slip op. at 6-7. The Board denied Smith's petition for review making the administrative judge's denial of the petition for enforcement the final decision of the Board. Final Order, slip op. at 2.

Smith timely appealed to this court. As this appeal comes from a final order of the Board, this court has jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

This court will overturn a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); Kievenaar v. Office of Pers. Mgmt., 421 F.3d 1359, 1362 (Fed. Cir. 2005).

The Board decision at issue here is the denial of Smith's petition for enforcement of the 2003 Order requiring the agency to carry out the EEOC's decision finding disability discrimination and provide him with back pay under the Back Pay Act. The Board is required to ensure agency compliance with its orders. 5 U.S.C. § 1204(a) (2000) ("The Merit Systems Protection Board shall— . . . (2) order any Federal agency

or employee to comply with any order or decision issued by the Board . . . and enforce compliance with any such order.") "The Board's enforcement power is far-reaching and functions to ensure that employees are returned to the status quo ante upon reversal of the agency's action. This includes the authority to resolve disputes over back pay." Crippen v. U.S. Postal Serv., 32 M.S.P.R. 522 (1987); see also Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 733 (Fed. Cir. 1984) ("The inclusion of [5 U.S.C. § 1204(a)(2)] was meant to be a broad grant of enforcement power . . . .").

Here, the Board's order required the agency to "carry out EEOC's decision" and "pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act." 2003 Order, slip op. at 5-6. In its denial of the petition for enforcement, the Board found that Smith could not receive back pay beyond the date of the removal because he did not appeal the removal. 2004 Decision, slip op. at 4. Therefore, the main issue presented in this appeal is whether Smith's removal in June 1997 terminated his right to receive any compensation for discrimination which occurred in November 1996.

On appeal, Smith argues that the Board erred by basing its denial on the theory that he is collaterally appealing his removal—rather, he states that he is merely seeking compensation for the illegal discrimination the Board already found that he endured, where his injury from that discrimination continued beyond his removal. The agency responds that the Back Pay Act only permits compensation for the period of the personnel action, here the period during which the constructive suspension was in effect. The agency also argues that jurisdictionally, the Board may not provide

compensation for a date beyond the end of the adverse action for which it took jurisdiction.

I.

The Board found that no relief was due past Smith's June 19, 1997 removal because he did not separately appeal that removal. The Board stated that Smith "may not use enforcement proceedings to obtain relief as to a separate non-adjudicated agency action," and that extending relief for Smith's discrimination beyond the date of his removal would amount to "enforc[ing] a compliance order against a party in a matter that has not been heard on the merits." 2004 Decision, slip. op. at 4. While these may be correct statements of law, neither is applicable to prevent Smith from obtaining relief beyond June 19, 1997.

Here, Smith is using enforcement proceedings to obtain relief for disability discrimination that occurred in November 1996. As the EEOC and the Board found, a Material Expediter position became available in November 1996 that could have accommodated Smith's disability and which he was ready and willing to undertake. Thus, Smith argues that if the discrimination had not occurred, he would have been in the Material Expediter position from which he would not have been removed. Instead, when the Board issued its 1997 decision finding that Smith was improperly suspended and ordering his reinstatement, the agency reinstated Smith to the same Welder position which he had been unable to perform previously due to his disability. Smith is not contending that his subsequent removal from the Welder position in July 1997, due to his inability to wear the required hearing equipment, was improper on its merits. The improper action at issue is that he was not placed in the Material Expediter position to

accommodate his disability when it became available almost a year earlier, in November 1996. The EEOC and Board have already held that the agency's failure to assign Smith to the Material Expediter position at that time resulted in disability discrimination in violation of the ADA. Therefore, the action for which Smith seeks relief, the illegal discrimination, was clearly adjudicated on its merits. By basing its denial of Smith's petition for enforcement on the grounds that his later removal was not adjudicated on its merits, the Board erred.

This case constitutes an unusual situation in which an appealable adverse action that began due to one improper agency act continued due to another. The agency improperly began the constructive suspension in July 1995 by denying Smith the required procedural due process. However, the constructive suspension continued past November 1996 due to disability discrimination—the agency's failure to place him in the then available Material Expediter position to accommodate his work-related disability. The petition for enforcement now before the Board relates only to the relief due for the discrimination. Therefore, we discuss below the relief due Smith under the Board's 2003 Order to compensate for the agency's discrimination.

II.

As compensation for discrimination, the Board ordered the agency to "carry out EEOC's decision" which the Board recognized as at least requiring the agency to reinstate Smith to the position he was denied due to discrimination. 2003 Order, slip op. at 2, n. The Board also required the agency to "pay [Smith] the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act." Id., slip op. at 5-6. Reinstatement, back pay, and benefits are routinely awarded by the Board and the

EEOC as relief for disability discrimination. See, e.g., Stewart v. U.S. Postal Serv., No. 07A40045, 2005 EEOPUB LEXIS 1358, at *8-10 (E.E.O.C. Mar. 18, 2005); Payne v. Dep't of Vet. Affairs, No. 01A42405, 2004 EEOPUB LEXIS 4727, at *17 (E.E.O.C. Aug. 24, 2004); Schrodt v. U.S. Postal Serv., 79 M.S.P.R. 609, 620-21 (1998); Gonzales v. Dep't of the Treasury, 46 M.S.P.R. 75, 77 (1990).

On appeal, the parties disagree as to the time period for which the Back Pay Act permits compensation. The language of the Back Pay Act states generally that an employee who has suffered an unwarranted personnel action and properly appeals the action is entitled to back pay "for the period for which the personnel action was in effect—an amount equal to all or any part of the pay . . . which the employee normally would have earned or received during the period if the personnel action had not occurred . . . ." 5 U.S.C. § 5596(b)(1)(A) (2000) (emphasis added). The agency argues that the "personnel action" for purposes of the Back Pay Act was the constructive suspension resulting from the Army's failure to place Smith in an available light duty position as a Materials Expediter. As the Act only requires compensation while that action was "in effect," the agency contends, Smith was due no compensation after the date his constructive suspension ended. Smith argues that the "personnel action" for purposes of the Back Pay Act is the discriminatory failure to place him in the available Material Expediter position in November 1996. Although the constructive suspension may have ended with his removal, Smith contends that the harm to him due to the wrongful discrimination did not end with his removal. If he had been placed in the available Material Expediter position in November 1996, he would not have been removed in July 1997 from the Welder position. Therefore, Smith argues that the period

05-3266                          11

during which the personnel action was in effect continued beyond the date of his removal, and he is thus entitled to back pay beyond that date. As discussed further below, we agree with Smith that the Back Pay Act does not limit his compensation due to discrimination to the period of his constructive suspension, as the agency contends.

"[T]he basic purpose of a . . . back pay order is 'restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination.'"

Kerr, 726 F.2d at 733 (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177 (1941)).

> The [Back Pay Act] itself does not address specifically how an agency is to calculate a back pay award and under what circumstances an employee who otherwise might be entitled to back pay is not to be awarded back pay by an agency. Rather, Congress authorized [the Office of Personnel Management ("OPM")] to prescribe specific regulations to carry out the Back Pay Act. Pursuant to this authority, OPM has issued implementing regulations concerning the computation of back pay . . . ."

Martin v. Dep't of the Air Force, 184 F.3d 1366, 1370 (Fed. Cir. 1999) (citations omitted). The OPM's regulations instruct:

> When an appropriate authority corrects or directs the correction of an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due an employee—
> (1) The employee shall be deemed to have performed service for the agency during the period covered by the corrective action . . . .

5 C.F.R. § 550.805 (2006) (emphases added). These regulations do not specify any particular termination of entitlement for relief, but only that the relief continues "during the period covered by the corrective action." We are left to determine the period for which the discrimination found by the EEOC and the Board was in effect for purposes of the Back Pay Act.

In determining the period for which the unwarranted personnel action was in effect under the Back Pay Act, it is instructive to look to a prior EEOC case providing an

employee relief for an agency's failure to accommodate. In <u>Payne v. Department of Veterans Affairs</u>, an employee was placed in a position which did not accommodate her disability for over two years, requiring her to take substantial leave from her position. 2004 EEOPUB LEXIS 4727 at *14. The employee filed a discrimination claim partially based on the grounds that the agency failed to provide her with a reasonable accommodation. Some time after she filed the claim, the employee took disability retirement. The EEOC found the agency had discriminated by failing to accommodate the disability and ordered the agency to reinstate her and pay various damages. <u>Id.</u> at *6. The agency provided her with pay only for unpaid leave taken prior to retirement, contending that neither back pay nor reinstatement were warranted after the date of retirement because the employee did not separately appeal that she was constructively discharged. <u>Id.</u> at *8.

On appeal, the employee argued that she was due back pay beyond the date of her retirement regardless of whether she appealed the retirement because she only took disability retirement due to her inability to continue working at her position without an accommodation. <u>Id.</u> at *7. The EEOC found for the employee, stating: "The agency failed to rebut complainant's contention and provided no evidence to show that she would have gone on disability retirement . . . even if the agency had provided her with a reasonable accommodation for her disability." <u>Id.</u> at *17. Therefore, the EEOC held that the employee was entitled to back pay from the date she took disability retirement until the date the discrimination was remedied through reinstatement. <u>Id.</u>

Similarly, here the EEOC held that Smith was subject to disability discrimination based on a failure to accommodate his disability. The Board adopted this finding and

ordered the agency to reinstate Smith and provide back pay. As in Payne, Smith has proven that he left the agency, here by removal, for inability to perform the very position from which the agency failed to accommodate him. Also as in Payne, the agency has thus far failed to provide any evidence to show that Smith would have been removed even if the agency had provided a reasonable accommodation for his disability. Therefore, as in Payne, Smith too may be entitled to back pay after the date of his removal.

Another consideration for the EEOC in Payne was the irony "that had the agency conducted the EEO process in a timely and fair manner, complainant's complaint may have been resolved before she left the agency on disability retirement." Id at *16. The same irony applies here. Had the Board realized in April 1997, when it issued its decision finding no disability discrimination, that Smith should have been accommodated in the Material Expediter position in November 1996 as ultimately held by the EEOC, and ordered his appointment to that position, the complaint would have been resolved before Smith was removed from the agency. Because of the Board's initial error in failing to find disability discrimination and the prolonged appeals process, the agency was not required to reinstate Smith and award back pay until August 2003. The agency cannot benefit from removing Smith for the very disability for which it failed to provide an accommodation, and then contend that it need not provide any relief for the discrimination because it removed him.

In Payne, with circumstances very similar to those before us, the EEOC found that the appropriate measure of back pay as a remedy is that which will make the employee whole. See id. at *8-9 ("The purpose of a back pay award is to restore

complainant to the position she would have occupied, but for the discrimination.") (citing Albemarle Paper Co. v. Moody, 442 U.S. 405, 418-19 (1975)). Payne demonstrates that the relief provided by the EEOC under the Back Pay Act solely for a failure to accommodate is such relief as would return Smith to the position he would have been in absent the unlawful discrimination. While Payne is not binding precedent for our court, we agree with its analysis of the intended remedy under the Back Pay Act in a discrimination case. Therefore, we agree with Smith that the "personnel action" of discrimination is in effect and an employee may receive relief under the Back Pay Act while he continues to suffer an injury flowing from the discrimination. In Smith's case, he showed that the effects of discrimination continued beyond his reinstatement to the Welder position because he should have been reinstated to the Material Expediter position from which he would not have been removed. Consequently, the right to relief for discrimination under the Back Pay act did not terminate merely because the constructive suspension formally ended.

Smith's right to reinstatement also did not arbitrarily terminate when his constructive suspension ended. Smith had the right to placement in the available Material Expediter position in November 1996. His right to placement in that position did not end when the Board erred in finding no discrimination in April 1997, allowing him to be reinstated to a position from which he could be removed. This right may have ended when the Material Expediter position was eliminated in December 2000, but the Board must make this determination in the first instance.

Accordingly, we conclude that the Board erred by not determining the appropriate relief owed Smith due to disability discrimination. As discussed below, the Board's jurisdiction also does not limit its ability to provide relief in this case.

III.

The agency contends that the Board's limited jurisdiction precludes an award of back pay beyond the period of the constructive suspension because the Board may not provide relief beyond the end of the adverse action under appeal. The agency, however, cites no case law for the proposition that when an employee has been discriminated against while constructively suspended, the relief for the discrimination ends if he or she is removed prior to final adjudication of the discrimination claim. Indeed, as discussed below, the cases cited by the agency do not require the result the agency urges here.

In Mattern v. Department of Treasury, the only case from our court cited by the agency, the Board found that an employee was improperly removed and ordered the agency to award the employee back pay. 291 F.3d 1366, 1371 (Fed. Cir. 2002). The employee filed a petition for enforcement arguing that the agency was required to pay him back pay for a time prior to his removal when he was placed on administrative leave or restricted duty, two actions he could not appeal to the Board because the Board lacked jurisdiction to hear appeals from those actions. Id. at 1370. This court held that these non-appealable actions did not trigger the commencement of an action for which an employee could be awarded back pay by the Board. Id. In other words, "the Board's power to make an aggrieved employee whole under the Back Pay Act extends back only to the effective date of the adverse action." Id. at 1371 (emphasis added).

In <u>Crippen</u>, another case cited by the agency, an employee appealed a demotion. 32 M.S.P.R. at 525. When the Board found the demotion was improper, the employee claimed back pay not from the date of the demotion, but from a date prior to the demotion when he alleged he was constructively suspended. The Board held that the employee could not receive back pay for the period between the date of his alleged constructive suspension and his properly challenged demotion reasoning that "back pay for this period <u>would flow from</u> an alleged constructive suspension occurring before the agency effected the demotion action—not the demotion action itself." <u>Id.</u> at 525 (emphasis added). Therefore, because the employee did not challenge the constructive suspension, he could not receive back pay for that earlier period. <u>Id.</u> As in <u>Mattern</u>, the Board held that it could not grant relief for a period prior to the appealed action. Relief flowing from the action found to be wrongful could not have begun to accrue prior to the commencement of that action.

The agency argues that the principle of these cases also establishes that the Board lacks authority to award compensation beyond the <u>end</u> of the appealed action. This result is required, the agency contends, because these cases hold that the Board cannot award compensation for losses caused by actions outside its jurisdiction.

It is well established that the Board is a tribunal of limited jurisdiction and can only decide appeals based on an enumerated list of adverse actions. Once it finds that such an action occurred, it can order compensation for the losses caused by that action. In response to a petition for enforcement, the Board is required to consider whether these orders were followed and order corrective action in case of non-compliance. <u>Kerr</u>, 726 F.2d at 733 (citing 5. U.S.C. § 1205(a)(2)). However, the Board's jurisdiction to

hear cases based on certain enumerated adverse actions does not limit its ability to compensate for injuries flowing from those actions. Cf. Crippen, 32 M.S.P.R. at 525 (injury that occurred prior to the adverse action could not have flowed from the adverse action). The key question is whether the employee can show that those injuries flowed from the unlawful action. If they did, relief putting the employee in the position he would have been in absent the adverse action must address these later injuries.

In both cases cited by the agency, Mattern and Crippen, the injuries for which the employees sought compensation occurred prior to the appealed actions. Therefore, the injuries necessarily could not have been caused by the improper agency actions. In contrast, here the period for which Smith seeks compensation occured after the end of the improper agency action. The agency was found to discriminate against Smith by denying him an accommodation for his disability when a suitable position became available in November 1996. Smith's removal occurred after the discrimination, on July 19, 1997, and he has alleged that but for that discrimination, he would not have been removed. The agency does not appear to dispute that Smith would not have been removed if he had not suffered the earlier improper action of not being placed in an accommodating position. Instead, the agency argues that any injury to Smith after his removal was caused by his removal and not the discrimination. However, if the removal itself flowed from the discrimination, as Smith alleges, then compensation for the discrimination must include the period after the removal. On remand, therefore, the Board must determine the totality of the injury due to the discrimination and the remedy required to place him in the position he would have been in absent that illegal agency action.

CONCLUSION

The Board's improper dismissal of Smith's petition for enforcement is vacated. The case is remanded for a determination, consistent with this opinion, of whether the agency complied with the Board's 2003 Order by providing Smith with the required relief for the November 1996 discrimination.

VACATED AND REMANDED.

# United States Court of Appeals for the Federal Circuit

05-3266

JOSEPH E. SMITH,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

RADER, Circuit Judge, dissenting.

Respectfully, I dissent from the majority opinion finding that Smith's failure to appeal the removal action does not bar his recovery of back pay in accordance with the law. Rather, I find that the Board properly denied Smith's petition for enforcement. Because Smith did not appeal his removal from Federal service, a separate personnel action from that from which he appealed, he is not entitled to back pay for any time period beyond that date.

The Board ordered the agency to "carry out the EEOC's decision" and to "pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act." 2003 Order, slip op. 5-6. The Back Pay Act, 5 U.S.C. § 5596 provides:

> (b)(1) An employee of an agency who . . . is found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee-
>
> (A) is entitled, on correction of the personnel action, <u>to receive for the period for which the personnel action was in effect</u>-

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred . . . .

(Emphasis added.)

While perplexing, the record reflects that Smith appealed solely from the agency's constructive suspension action, not from the removal action, even though he and his lawyer were informed of his right to appeal. Thus, the sole "personnel action" at issue here was the constructive suspension. Smith was not constructively suspended from the position of Materials Expediter. Rather, Smith was constructively suspended from his position as a welder, the constructive suspension from the welder position spanning the period between his initial placement on leave without disability until his eventual removal from that position. Therefore, the period of compensation for purposes of the Back Pay Act, i.e., the period in which Smith was constructively suspended, ended by June 1997 and the army correctly followed the EEOC's directions.

It is uncontested that Smith has received all of the back pay owed to him from this constructive suspension and that he continued to be paid until his last day of federal employment. Entitlement for back pay for the period of time that Smith could have been employed as a Materials Expediter beyond this date would have flown from the removal action because, as Smith argues, he would not have been removed if he had been placed in the Materials Expediter position. While the majority is correct that the Board's enforcement power is far-reaching, it simply does not extend to personnel actions which were never appealed. Worthing v. United States, 168 F.3d 24, 27 (Fed. Cir. 1999), see also Mattern v. Dep't of Treasury, 291 F.3d 1366, 1369-70 (Fed. Cir. 2002).

Smith argues that his removal is related to his constructive suspension and therefore, even though he only appealed his constructive suspension, he is entitled to back pay up to the period that the Materials Expediter position was terminated in order to return him to the status quo ante. Thus, Smith is arguing in effect that he would have been terminated in 2000 instead of 1997. However, arguably, this may not have been what resulted. Had the Materials Expediter position been eliminated, perhaps Smith would have been placed in another position and not removed in 2000, indeed, the Army may have been required to locate another accommodating position for him. Or maybe Smith would have been removed from the Materials Expediter position before it was eliminated. In fact, the period of damages Smith is claiming could have ended earlier or could have continued into perpetuity. Thus, Smith's argument that he is entitled to back pay up until 2000 is speculative at best. Had Smith timely appealed his removal these issues may have been considered by the Board. However, he did not, and it is not for the Board to enforce a matter that has not been heard on the merits. See Guy v. Dep't of Energy, 37 M.S.P.R. 230, 233 (1988). Thus, I would affirm the Board's dismissal for lack of jurisdiction.