NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**THOMAS W. FOSTER,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2020-1691

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-18-0039-C-1.

---

Decided: October 15, 2020

---

THOMAS W. FOSTER, Lacey, WA, pro se.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JEFFREY B. CLARK, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* BRYSON and WALLACH, *Circuit Judges.*

PER CURIAM.

Petitioner, Thomas Foster, seeks review of a final decision of the Merit Systems Protection Board ("MSPB") denying Mr. Foster's petition for enforcement ("PFE") of a prior MSPB order requiring the Department of the Army ("Army") to reinstate Mr. Foster and pay him appropriate backpay and benefits. *See Foster v. Dep't of the Army*, No. SF-0752-18-0039-C-1, 2020 WL 231243 (M.S.P.B. Jan. 7, 2020) (P.A. 1–19) (Final Decision).[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). We affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

During the relevant time period, Mr. Foster was employed by the Army in the position of Lead Firefighter, GS-0081-08, at Joint Base Lewis-McChord, Washington. *Foster v. Dep't of the Army*, No. SF-0752-18-0039-I-1, 2018 WL 2762189 (M.S.P.B. June 4, 2018) (Cancellation Order).[2] In September 2017, the Army decided to remove Mr. Foster, effective October 1, 2017, "based on a charge of conduct unbecoming of a Federal employee[,]" specifically, "making an anti-Semitic comment[.]" *Id.* Mr. Foster retired in lieu of removal, and subsequently filed an appeal

---

[1] In keeping with the parties' naming of the appendices, "P.A." refers to the appendix attached to Mr. Foster's informal brief; "S.A." refers to the appendix attached to the Army's informal response brief; and "S.P.A." refers to the supplemental appendix attached to Mr. Foster's informal reply brief.

[2] Neither Mr. Foster nor the Army included the MSPB's Cancellation Order in their respective appendices. *See generally* P.A.; S.A.; S.P.A. Accordingly, we cite to the publicly available version, which is unpaginated.

with the MSPB. *Id.*[3] In June 2018, the MSPB administrative judge ("AJ") issued the Cancellation Order reversing Mr. Foster's removal based on a due process violation, and ordered the Army to: (1) cancel Mr. Foster's removal and "retroactively restore [him] effective September 30, 2017"; (2) pay Mr. Foster "the appropriate amount of back[]pay, with interest[,] and to adjust benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than [sixty] calendar days after the date [the Cancellation Order] becomes final"; and (3) "inform [Mr. Foster] in writing of all actions taken to comply with the [MSPB's] [Cancellation] Order[.]" *Id.* The Cancellation Order became final on July 9, 2018. *Id.*[4]

After cancelling Mr. Foster's removal, on September 14, 2018, the Army removed Mr. Foster for a second time, and the MSPB subsequently sustained this removal. P.A. 2. In October 2018, Mr. Foster filed a PFE of the MSPB's Cancellation Order reversing his first removal, arguing that the Army was not in compliance with the

---

[3] Though the record is unclear as to the effective date of his retirement, *see* P.A. 2 (stating only that Mr. Foster's "October 1, 2017 retirement" "preceded the effective date of the retirement"), Mr. Foster does not challenge the MSPB's treatment of October 1, 2017 as the effective date of his retirement. *See generally* Pet'r's Informal Br.

[4] The Cancellation Order became final on July 9, 2018, when neither Mr. Foster nor the Army filed a petition for review by that date. *See* 5 C.F.R. § 1201.113 (providing that "[t]he initial decision of the judge will become the [MSPB's] final decision [thirty-five] days after issuance" unless, inter alia, "(a) . . . any party files a petition for review"); *see also Foster*, 2018 WL 2762189 ("This initial decision will become final on July 9, 2018, unless a petition for review is filed by that date.").

Cancellation Order because Mr. Foster was still "in a [Leave Without Pay] status" and had not been paid any backpay. S.A. 47; *see* S.A. 43–48 (Petition for Enforcement). In May 2019, the Army paid Mr. Foster $17,459.97, reflecting $43,336.65 in gross backpay, offset by $25,876.68 in deductions for retirement, income tax, investment, and healthcare premiums. P.A. 53; S.A. 320. The parties submitted briefs on the PFE and engaged in mediation, which ended unsuccessfully in July 2019. S.A. 75–76, 125–27, 134–37. On August 23, 2019, the AJ ordered the Army "to file an updated written response" to Mr. Foster's PFE, "show[ing] proof that [the Army] has complied with the [MSPB]'s [Cancellation Order], or that it has good cause for noncompliance[.]" S.A. 139. On October 2, 2019, the Army submitted an Agency Final Accounting and Supplemental to Agency PFE Response, S.P.A. 5–7, and the AJ closed the record on December 9, 2019, P.A. 3.

In January 2020, the AJ issued an initial decision. *See* P.A. 1. The AJ found that "although the [Army] was not in compliance with the [Cancellation] Order when [Mr. Foster] filed his PFE," it had since "submitted satisfactory evidence of compliance with its obligations to cancel [Mr. Foster]'s removal and retroactively restore him to his position until he was subsequently removed; and pay [him] the correct amount of back pay, interest on back pay, and other benefits due." P.A. 11. Accordingly, the AJ denied Mr. Foster's PFE, *id.*, and the initial decision became final in February 2020. [5]

## DISCUSSION

The MSPB concluded that the Army had submitted satisfactory evidence of compliance with its Cancellation

---

[5]    The AJ's initial decision became the final decision of the MSPB on February 11, 2020, when neither Mr. Foster nor the Army filed a petition for review by that date.

Order as to the backpay paid to Mr. Foster, including the appropriateness of various deductions and recoupments for overpayments. P.A. 4–11. Mr. Foster challenges the MSPB's findings as to: (1) owed gross backpay and overtime, and deductions for health insurance and retirement benefits; and (2) payment of the appropriate uniform allowance, as unsupported by substantial evidence. Pet'r's Informal Br. 4–8. We address each argument in turn.

## I. Standard of Review and Legal Standard

We "hold unlawful and set aside" an MSPB decision that is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c). "The MSPB abuses its discretion when[,]" inter alia, "the decision is based on . . . factual findings that are not supported by substantial evidence[.]" *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla of evidence, but less than the weight of the evidence[.]" *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "Under the substantial evidence standard, this court reverses the [MSPB]'s decision only if it is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (internal quotation marks and citations omitted). "The petitioner bears the burden of establishing error in the MSPB's decision." *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1372 (Fed. Cir. 2018) (alterations omitted).

As is relevant here, "the purpose of . . . a cancellation order is to place the employee as nearly as possible in the status quo ante"—that is, the position the employee would have been in, but for the wrongful agency action. *Kerr v.*

*Nat'l Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984); *see Smith v. Dep't of Army*, 458 F.3d 1359, 1364 (Fed. Cir. 2006) ("The [MSPB]'s enforcement power . . . functions to ensure that employees are returned to the status quo ante upon reversal of the agency's action."). This includes "compensation for any loss of wages or benefits that [the employee] suffered by reason of [the wrongful agency action]." *Marshall v. Dep't of Health & Human Servs.*, 587 F.3d 1310, 1317 (Fed. Cir. 2009). Compliance with a cancellation order is a question of fact, which we review for substantial evidence. *See id.*

Regarding computation of owed backpay, OPM regulations provide, in relevant part, that an agency "must" offset a gross backpay award by "[a]ny erroneous payments received from the Government as a result of the unjustified . . . personnel action," including "[r]etirement annuity payments[.]"   5 C.F.R. § 550.805(e)(2). The agency must also deduct payments "of the type that would have been made from the employee's pay[,]" including, inter alia, "Medicare taxes[,]" "Federal income tax withholdings[,]" "health benefits premiums," and "[m]andatory employee retirement contributions towards a defined benefit plan[.]" *Id.* § 550.805(e)(3).

## II. Substantial Evidence Supports the MSPB's Finding that the Army Complied with the MSPB's Cancellation Order as to Backpay

The MSPB found that the Army had complied with the Cancellation Order by paying Mr. Foster the appropriate amount of backpay and interest, including deductions for health insurance and retirement benefits he had received. P.A. 5–6.[6]   Mr. Foster argues that the Army failed to

---

[6]   As Mr. Foster chose to retire in lieu of removal, *Foster*, 2018 WL 2762189, he received retirement benefits.

provide a sufficient explanation for its gross backpay calculations and retirement deductions, improperly deducted health insurance premiums, and should have paid him overtime. Pet'r's Informal Br. 4–8. We disagree with Mr. Foster.

Substantial evidence supports the MSPB's finding that the Army paid Mr. Foster the appropriate backpay for the period from October 1, 2017 to September 14, 2018, the dates of Mr. Foster's first and second removals. First, the Defense Finance and Accounting Service ("DFAS") calculated the gross backpay Mr. Foster would have earned from October 1, 2017, to August 30, 2018. S.A. 322–24 (Back Pay Computation Summary Report); *see* S.A. 258–59 (detailing, inter alia, Mr. Foster's "Pay Plan[,]" "Grade/Level[,]" "Step/Rate[,]" and "Total Salary" for the relevant period). Next, DFAS then added compensation for "[i]nterest on [b]ack [p]ay" and "[a]nnual [l]eave[.]" S.A. 320–21, 330–31. The record supports DFAS's decision not to compensate Mr. Foster for "irregular overtime" hours he hypothetically could have worked during the backpay period, as he did not volunteer for any irregular overtime for the two-year period prior to his first removal. S.A. 3551 (providing that "Mr. Foster did not work . . . any irregular overtime hours" from October 1, 2015 to September 30, 2017). Next, DFAS deducted retirement benefits the Office of Personnel Management ("OPM") had paid Mr. Foster during the relevant period. S.A. 320–21; *see* S.A. 282 (detailing the retirement benefits paid to Mr. Foster "from 10/01/2017 thru 08/30/2018"). Finally, DFAS deducted further retirement, income tax, insurance, and investment contributions that Mr. Foster would have paid, had his first removal not occurred. S.A. 320 (detailing deductions for, inter alia, "Medicare[,]" "Federal Income

---

P.A. 55–62 (detailing annuity payments paid to Mr. Foster).

Tax[,]" "Dental Insurance[,]" and a Thrift Savings Plan). The above deductions are required by OPM regulations. *See* 5 C.F.R. § 550.805(e)(2)(i)–(3)(v). Accordingly, substantial evidence supports the MSPB's finding that the Army "demonstrated it properly paid [Mr. Foster] the amount of backpay due him as a result of" the MSPB's Cancellation Order. P.A. 4.

Mr. Foster's primary counterargument is unpersuasive. Mr. Foster contends that the Army should not have deducted health insurance premiums from his backpay award because, subsequent to the MSPB's Cancellation Order, he indicated to DFAS that he did not wish to have his health insurance reinstated during the backpay period. Pet'r's Informal Br. 5; *see* P.A. 29–30 (Employee Statement Relative to Back Pay). Mr. Foster is incorrect. As noted, OPM regulations require that an agency offset a backpay award by "erroneous payments," such as "[h]ealth benefits premiums, if coverage continued during a period of erroneous retirement." 5 C.F.R. § 550.805(e)(2), (3)(iii). Here, the record establishes that Mr. Foster received at least several months of health benefits during his "erroneous retirement." P.A. 57–62 (detailing deductions for "Blue Cross/Blue Shield Service Benefit Plan" premiums from February 2018 to July 2018). Thus, deduction of the health insurance premiums from the backpay award was consistent with OPM's regulations, despite Mr. Foster's later statement to DFAS that he did not wish to have health insurance reinstated. Accordingly, substantial evidence supports the MSPB's finding that the Army paid Mr. Foster the proper amount of backpay.[7]

---

[7]    The Army argues that "the MSPB did not need to reach whether the [Army] could deduct health insurance premiums contrary to Mr. Foster's election because the [Army] did not make such deductions." Resp's Informal Br.

### II. Substantial Evidence Does Not Support the MSPB's Finding that the Army Complied with the MSPB's Cancellation Order as to Uniform Allowance

The MSPB concluded that Mr. Foster was only entitled to a $400 semi-annual uniform allowance, and that the Army had "produced sufficient evidence to establish" that it had complied with the Cancellation Order by paying Mr. Foster this uniform allowance. P.A. 9. Mr. Foster challenges these findings as unsupported by substantial evidence. *See* Pet'r's Informal Br. 7. Specifically, Mr. Foster argues that he "should have been treated as a new hire with full initial uniform allowance benefits of $1,600.00" because the "record . . . does not refute or dispute" that he "was required by the Army to turn in his uniforms and safety equipment[.]" *Id.* (alterations omitted). We agree with Mr. Foster.

The MSPB's finding that the Army had paid Mr. Foster an appropriate uniform allowance is unsupported by substantial evidence. Indeed, there is no evidence in the record to support the conclusion that the Army has paid Mr. Foster a uniform allowance. *See generally* S.A. 320–21, 322–24, 331–32. In fact, the Army concedes that it has never paid Mr. Foster a uniform allowance for the relevant

---

16, n.4. The Army contends that, through a rather convoluted process of payments and recoupments, it "honored Mr. Foster's election" and ultimately did not deduct health insurance premiums from his backpay. *See id.* at 16–17. Because the Army does not appear to have raised this argument before the MSPB, *see generally* P.A. 5–6, we will not consider it for the first time on appeal. *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge" if the issue is "to be preserved for review in this court.").

period.  *See* Resp's Informal Br. 19–20 ("The MSPB did, however, make a misstatement [concerning the uniform allowance] . . . because the payment was still underway at the time of the [Army's] November 27, 2019[,] filing and no subsequent proof of payment was provided."), 20–21 (explaining that the Army has not paid Mr. Foster the uniform allowance "[b]ecause Mr. Foster never provided the necessary form").  Accordingly, the MSPB's finding that the Army paid Mr. Foster the appropriate uniform allowance was unsupported by substantial evidence.

The MSPB's finding that Mr. Foster is only entitled to a $400 semi-annual uniform allowance is also unsupported by substantial evidence.  The MSPB premised this finding on its reasoning that Mr. Foster was "entitled to that which he would have received if he had remained employed with the [Army] until" his second removal, which "would not include an initial uniform allowance."  P.A. 9.  However, Mr. Foster argued before the MSPB that he should have received the full initial uniform allowance because he "was required to turn in his uniforms and safety equipment upon his separation[.]"  P.A. 120.  It is unclear from the record whether the Army required Mr. Foster to return his uniforms and equipment, and, if so, whether such items belong to the civilian employee or whether they are Army property and routinely returned at the end of employment.  *See generally* P.A.; S.A.; S.P.A.  The MSPB's Final Decision contains no analysis or fact-finding concerning these questions.  *See generally* P.A. 9 (stating only that Mr. Foster sought the $1,600 initial uniform allowance "because he was subject to an unjustified and unwarranted personnel action").  Accordingly, the record as it stands now, does not contain substantial evidence supporting the MSPB's finding that Mr. Foster was entitled only to a $400 semi-annual uniform allowance.

The question of what uniform allowance would place Mr. Foster in the position he would have been in, prior to

his first removal, depends upon the results of additional fact-finding. We remand, so that the MSPB may allow the parties to submit evidence on whether the Army required Mr. Foster to return his uniforms and equipment, and if so, whether this is standard procedure in such situations or whether these items are regarded as the employee's property, in order to determine the uniform allowance necessary to place Mr. Foster in status quo ante.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, the MSPB's Final Decision is affirmed-in-part and reversed-in-part. The case is remanded to the MSPB for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

## COSTS

No costs.