**John H. KERR, Petitioner,**

v.

**NATIONAL ENDOWMENT FOR THE ARTS, Respondent.**

**Nos. 83–865, 83–866.**

United States Court of Appeals, Federal Circuit.

Jan. 24, 1984.

Matthew L. Myers, Washington, D.C., argued for petitioner.

Ronnie S. Alkire, Washington, D.C., argued for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Washington, D.C., Susan Liberman, Washington, D.C., of counsel.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and BALDWIN, Circuit Judge.

DAVIS, Circuit Judge.

Before us for review are two decisions of the Merit Systems Protection Board (MSPB or Board) involving the Board's cancellation of the National Endowment for the Arts' (NEA or agency) involuntary termination of petitioner John H. Kerr from his position at NEA. We vacate and remand the

Board's determination of January 11, 1983, that the agency had complied with the April 9, 1981 order which had cancelled petitioner's termination, and we affirm the Board's denial of petitioner's motion for attorney fees for the litigation leading to the April 9, 1981 order.

I

Kerr was involuntarily terminated by the NEA, effective August 31, 1979, from his position as Director of Education Programs.[1] Following petitioner's appeal of his dismissal to the MSPB's Boston Field Office, the presiding official issued an initial decision on September 2, 1980 in which he ordered that the termination action be cancelled.[2] In its opinion and order dated April 9, 1981, the Board denied NEA's petition for review of this decision, and ordered the agency "to furnish evidence of compliance with the initial decision to the Field Office within ten (10) days of the date of this order".

A lengthy struggle ensued during the next several months over the agency's compliance with that order—involving petitioner, the agency, and the Boston Regional Office. After the Regional Director of the MSPB's Boston Office on October 6, 1981, set a November 5, 1981 hearing date on compliance issues, the agency (on October 8, 1981) sent petitioner a letter ordering his return to active duty on November 16, 1981. The letter indicated that petitioner was to be returned to his former position, Director of Education Programs, at the same grade and pay as he had held previously. Petitioner responded with the assertion that, between the dates of his removal and the Board's reinstatement order, NEA had shifted all the duties and responsibilities of his previously held position to another posi-

1. The position of Director of Education Programs is a Schedule A excepted service position, GS–15. Soon after petitioner's appointment to that position in 1969, he initiated the "Artists-In-Schools" program in which artists are placed in primary and secondary schools around the country. The 1969 pilot program placed artists in six states' schools; by 1974–75 the program included 50 states and 2,327 artists in over 5,000 schools. It is apparently not

disputed that most, if not all, of petitioner's duties and responsibilities, prior to his wrongful removal, had to do with the administration of this program.

2. The ground of this decision was that the agency had not pursued proper procedures in terminating petitioner.

tion entitled Director, Artists-In-Schools Program. He claimed that, because no new duties had been assigned to the Director of Education Programs position, it had become a "sham" position to which the agency wished to reinstate him.

A compliance hearing was held on November 6, 1981, and an initial decision issued on February 22, 1982, in which the Regional Director found that (1) the agency had improperly denied Mr. Kerr a timely return to active duty by at least eight months, and (2) the position to which the agency returned petitioner existed only on paper and was a sham. He recommended that Kerr be transferred to the position which now embodied his former duties and responsibilities, i.e., Director, Artists-In-Schools Program.

Both parties appealed the Regional Director's initial decision. NEA maintained that it had reinstated petitioner to his former position with duties comparable to his former duties; petitioner argued that the Regional Director had failed to examine whether the agency's actions had resulted from retaliation by the agency's then chairman based on personal animus.

In the January 11, 1983 opinion and order—the order now on review—the MSPB (1) sustained the presiding official's refusal to consider petitioner's retaliation claim, (2) held that the agency had complied with the Board's April 9, 1981, order (cancelling petitioner's termination) "when it returned [petitioner] to active duty in his former position..." because "[a]bsent a reduction in grade or pay, a reassignment of positions or duties is not an action appealable to the Board", and (3) agreed that the agency's failure to return Kerr to active duty within a reasonable time constituted substantial noncompliance with the Board's April 9, 1981 order, but declined to adopt several admonishments of the agency recommended by the Regional Director. Petitioner maintains that the Board erred in holding that simply reinstating him to his former title, grade and pay was sufficient to constitute compliance, and also in failing to make factual findings concerning the claim that the adverse personnel actions taken against him resulted from personal animus by NEA officials.

Before us, also, is the government's motion to dismiss this aspect of the case as moot; it is said that, even if petitioner "had very few duties upon his return to the Endowment", he now "has substantial current responsibilities". Petitioner opposes the motion, asserting that his allegation is "as accurate today as it was prior to the initiation of this appeal".

## II

We hold that the MSPB erred as a matter of law in ruling that its authority over the matter of compliance ended when petitioner resumed active duty in his former position at the same grade and pay. See 5 U.S.C. § 7703(c). Contrary to the Board's characterization (in its January 11, 1983 opinion) of Kerr's current complaint, the compliance issue is not an original "personnel action" concerning a reassignment of duties without change of grade or pay, actions which are generally not appealable to the Board. See 5 U.S.C. § 2302(a). Rather, the real question here is that of the Board's enforcement powers over the agency's compliance with the Board's prior order of April 9, 1981. Congress expressly granted the Board special power to enforce compliance with its orders:

Powers and Functions of the Merit Systems Protection Board and Special Counsel

(a) The Merit Systems Protection Board shall—

(1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, section 2023 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter;

(2) order any Federal Agency or employee to comply with any order or decision issued by the Board under the authority granted under paragraph (1) of this subsection and enforce compliance with any such order....

5 U.S.C. § 1205(a)(1)(2) (emphasis added). That the inclusion of this provision (a)(2) was meant to be a broad grant of enforcement power is indicated by the legislative history to the Civil Service Reform Act of 1978:

> The committee included a provision ... making explicit the Board's enforcement authority. The Board is authorized to order any Federal agency or employee to comply with any order or decision issued by the Board pursuant to any matter within its jurisdiction, *and to take appropriate steps to enforce compliance with its order.*

S.Rep. No. 969, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2751 (emphasis added); *see also id.* at 2728.

The original MSPB order of April 9, 1981 directed the agency to comply with the initial (presiding official's) decision that petitioner's termination be cancelled. The purpose of such a cancellation order is to place the employee as nearly as possible in the *status quo ante.*[3] In our view, appropriate steps to enforce compliance must include more than the formal determination that an individual was reinstated to a position bearing the same title, grade and pay—no matter what the actual content of that position may be at the time of reinstatement. Rather, the Board should, where appropriate, also make a substantive assessment of whether the actual duties and responsibilities to which the employee was returned are either the same as or substantially equivalent in scope and status to the duties and responsibilities held prior to the wrongful discharge. Further, the Board should order corrective action in cases of non-compliance, authority for which resides in 5 U.S.C. § 1205(a)(2), *supra.*

We cannot distinguish, in this regard, the MSPB's remedial powers from those of the National Labor Relations Board (NLRB). As the Supreme Court stated in one NLRB case, the basic purpose of a reinstatement or back pay order is "restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination". *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). The NLRB has held that reinstatement offers (1) must be made in good faith, *see Earl I. Sifers,* 92 NLRB 1280 (1951), (2) must be unequivocal, *see Leeding Sales Co.,* 155 NLRB 753 (1965), and (3) must encompass employment which is substantially the same as that previously held before discharge, *see Thomas J. Aycock, Jr.,* 154 NLRB 1716 (1965), enforced as modified 377 F.2d 81 (5th Cir.1967). Despite a good faith claim by petitioner, and a specific finding by the Regional Director, that those conditions were not fulfilled here (particularly the last), the MSPB wholly failed to consider whether the Director's initial findings were correct or sustainable.

The Board erred in this determination that petitioner's mere reinstatement to his former title at the same grade and pay ended any further consideration by the MSPB concerning actual compliance. The matter of compliance did not end with that formal reinstatement, and the Board had and has jurisdiction to consider the particulars of petitioner's claim under 5 U.S.C. § 1205(a)(2).

We therefore vacate that portion of the January 11, 1983 order and remand the compliance issue to the Board for a substantive evaluation of petitioner's allegations and a determination concerning the correctness of the Regional Director's compliance decision in light of the discussion *supra.* The Board may, if it wishes, open the record to further evidence, and if it does so may, of course, return the case to the Re-

---

**3.** The Supreme Court long ago stated that the general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.
*Wicker v. Hoppock,* 6 Wall. (73 U.S.) 94, 99, 18 L.Ed. 752 (1867), quoted with approval in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975).

gional Director (or other appropriate official). In light of this remand to the Board, we also leave open to the Board a re-assessment of its evaluation of petitioner's "personal animus" claims, should it find a re-evaluation necessary.[4]

Furthermore, because it could only be a finding that there has been full compliance that could render this case moot, and we can make no such finding at this time, we deny without prejudice the government's motion to dismiss. On remand, the Board may take account of the facts set forth in the government's motion, to the extent those facts are proved. Finally, the government argues that petitioner's proper channel of remedy was the filing of a complaint with the Special Counsel concerning a prohibited personnel action under 5 U.S.C. § 2302(b)(9). Because we hold that the MSPB does have the compliance power for which petitioner contends, we need not reach the question whether he could alternatively have pursued his complaint with the Special Counsel.

## IV

■ The other issue concerns the Board's January 11, 1983, denial of petitioner's motion for attorney fees from the litigation which resulted in the April 9, 1981, order in his favor. Petitioner requested attorney fees by motion filed May 27, 1981, well beyond the 10-day time period prescribed by 5 C.F.R. § 1201.37(a)(2).[5] The presiding official denied the motion after affording petitioner an opportunity to show "good cause" for the untimely request, and the Board denied the subsequent petition for review of that decision.

Petitioner's factual support for his contention that there was "good cause" for the

delay was thoroughly considered by the presiding official and the full Board, and we cannot say that the Board was arbitrary or capricious, or that it made any error of law, in reaching its decision. In sum, petitioner's prior attorney failed to inquire into the time limit and simply claims to have been too busy to file his motion on time, or to have sought an extension. Petitioner has presented no evidence or arguments to us requiring us to reconsider that reasoned decision regarding those fees. This does not prevent petitioner from seeking attorney fees, under an appropriate provision, for the litigation, past and future, involving the matter of compliance.

### Conclusion

For these reasons, the decision of the MSPB in Appeal No. 83–866 is vacated and remanded, and its decision in Appeal No. 83–865 is affirmed.

No. 83–866—*Vacated and Remanded.*

No. 83–865—*Affirmed.*

4. Petitioner has not persuaded us that thus far the Board has erred with respect to his retaliation claims. Our review of the existing record leads us to agree with the Board that

the record does not disclose an allegation of a prohibited personnel practice or evidence thereof which required that such a determination be made. Furthermore, although evidence of such animus may have been relevant in determining whether the agency's delay in returning appellant to active duty was

justified, the fact that the Regional Director failed to make such a determination did not substantially affect the rights of appellant in light of his finding that the agency, indeed, improperly delayed appellant's return to active duty.

5. 5 C.F.R. § 1201.37(a)(2) requires, in part, that a request for fees "shall be made by motion within 10 days of the final date of a decision...."