**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent– Appellee.**

No. 01–7056.

United States Court of Appeals, Federal Circuit.

Jan. 8, 2002.

Before MICHEL, RADER, and BRYSON, Circuit Judges.

PER CURIAM.

Appellant Larry A. Gaines challenges the United States Court of Appeals for Veterans Claims' ("CAVC") dismissal without prejudice of his appeal of a Board decision that reopened its 1971 and 1972 final decisions and remanded to the Regional Office ("RO") Gaines' claim for service connection for a bilateral knee condition. Gaines urges that we reverse the dismissal for lack of jurisdiction and order the CAVC to consider the merits of whether the original RO decisions had not been appealed and were now final. The Board's decision to reopen and remand the case to the RO for expedited factual development was, *a fortiori*, not final. And because there was no final Board determination, the CAVC lacked jurisdiction to hear the appeal. *Ledford v. West,* 136 F.3d 776, 779 (Fed.Cir.1998) ("In short, there was no Board decision for the Court of Veterans Appeals to review ... and thus the court had no jurisdiction to consider that issue."). Accordingly, dismissal without prejudice for lack of jurisdiction was proper; as the CAVC indicated, any issue regarding the finality of the original RO decisions may be raised on remand, and ultimately with that court, once the RO has considered the additional evidence and the Board has rendered a final decision. Therefore, the CAVC dismissal is affirmed.

**Karen Y. WAINWRIGHT, Petitioner,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 01–3295.

United States Court of Appeals, Federal Circuit.

Jan. 10, 2002.

Before LOURIE, CLEVENGER, and GAJARSA, Circuit Judges.

PER CURIAM.

Karen Y. Wainwright seeks review of a final decision of the Merit Systems Protection Board ("Board") denying her petition for enforcement of a previous Board order entered in her favor when she prevailed in her Whistleblower Protection Act ("WPA") case. The Board concluded that the Department of Health and Human Services ("the agency") had substantially complied with the Board's previous order. *See Wainwright v. Dep't of Health & Human Servs.*, No. SE1221990002–C–1 (July 28, 2000). Because the Board's corrective order is legally insufficient, we *vacate* the Board's final decision and *remand* the case so that the agency may attempt to satisfy its obligations under a properly crafted Board order.

## I

The relevant facts may be stated briefly. Ms. Wainwright was employed by the agency in the Viral Hepatitis Program of its Alaska Native Medical Center. Ms. Wainwright filed a complaint on September 20, 1997, under the WPA. She alleged that her superiors had engaged in improper acts, and that in retaliation for her complaint about those acts she had been punished by, *inter alia*, stripping her of her responsibilities in the Viral Hepatitis Program. She won her WPA case, and the Board ordered the agency to take the following corrective action:

> [R]eturn appellant to the Nurse Specialist, GS–610–11, position number MC839F, she held prior to the removal of any and all of her hepatitis duties and responsibilities and the subsequent reassignment; and restore appellant to her position as Associate Director of the Viral Hepatitis Program responsible for the surveillance, reporting and ongoing program functions of the Hepatitis B program which is part of the Viral Hep-

atitis Program, and all of the duties and responsibilities associated with this position as well as all of the other duties and responsibilities of the position description for the Nurse Specialist, GS–610–11, position number MC836F held by appellant on December 9, 1996, following the realignment.

*Wainwright v. Dep't of Health & Human Servs.*, No. SE1221990002–W–1 (Jan. 13, 2000).

The same corrective order also afforded Ms. Wainwright an alternative form of relief—placement in a two-year job appointment for which she had earlier applied, but had been rejected in retaliation for her WPA-protected disclosures. Ms. Wainwright decided not to take the alternative relief, as was her choice. The alternative relief is therefore of no relevance to our decision in this appeal. Ms. Wainwright chose instead to hold the Board and the agency to the first part of the corrective order, namely, restoring her to the Associate Director position that she had formerly occupied and vesting her with the responsibilities and duties she shouldered before the unlawful retaliatory acts taken against her in 1996.

■ It is settled law, which the agency fully accepts, that when an individual such as Ms. Wainwright has been wronged by illegal agency action, the agency must restore that person to the status quo ante, *i.e.,* "restoration of the situation, as nearly as possible, to that which would have obtained but for" the wrongful action. *Kerr v. National Endowment for the Arts,* 726 F.2d 730, 733 (Fed.Cir.1984).

One might have expected, after the Board's corrective order of January 13, 2000, that Ms. Wainwright would have promptly been restored to her previous GS–610–11 position and her position of Associate Director of the Viral Hepatitis Program. This was not the case. In 1998,

the agency began preparations to transfer all of its responsibilities for the Alaska Native Medical Center, including the Viral Hepatitis Program, to the Alaska Native Tribal Health Consortium ("ANTHC"). Authorized by the Indian Self–Determination and Education Assistance Act, the transfer was effective January 1, 1999. ANTHC decided to staff the transferred facilities by retaining civil service employees on special purpose Intergovernmental Personnel Act ("IPA") assignments. Since the agency would be "out of the business" of delivering health care at the Alaska Native Medical Center on January 1, 1999, the agency counseled its employees in October of 1998 on how to obtain IPA assignments. Ms. Wainwright received a GS–11 IPA assignment for the period of January 1, 1999 to September 30, 2000. She thus had a job when the agency handed the facility over to the ANTHC, and she was in that job on January 13, 2000, when she won her WPA case.

In response to the Board's corrective order, the agency apparently restored Ms. Wainwright on its books to the precise GS–11 position she had once occupied, and requested assistance from ANTHC in meeting its obligations under the corrective order. The agency knew that it lacked the power to compel ANTHC to give Ms. Wainwright the relief promised by the corrective order, because the agency lost all control over the Alaska Native Medical Center on January 1, 1999. Although the Board's corrective order was designed to restore Ms. Wainwright to her previous positions, the order was meaningless as directed to the agency, because the agency had no power to comply with the order. Absent consent from ANTHC, compliance with the corrective order was impossible. Hence, the agency requested that ANTHC cooperate. ANTHC refused, stating that having Ms. Wainwright in the

Viral Hepatitis Program "would interrupt current services." According to Ms. Wainwright, the same management, which punished her for her protected disclosures in 1996, now runs ANTHC, and thus ANTHC's resistance is unsurprising. Whether Ms. Wainwright is correct in her assertion is unnecessary for us to decide.

## II

At the time the Board fashioned its corrective order, the agency had full knowledge that it could not guarantee that ANTHC would abide by its request of complete restoration for Ms. Wainwright. The agency asserts that it complied with the Board's order in restoring Ms. Wainwright to her previous position on paper, and in requesting that ANTHC continue her in her previous position with her former duties and responsibilities. In denying Ms. Wainwright's petition for enforcement, the Board agreed.

■ As we noted above, an agency must restore a wronged employee to the status quo ante. Of course, it may be impossible to create exactly the same situation as previously existed, so the law quite reasonably requires the agency to achieve restoration "as nearly as possible." An agency cannot avoid its obligations under a corrective order merely by arguing that the position to which the employee is ordered to be returned has since been occupied by another person. *Mann v. Dep't of Veterans Affairs,* 29 M.S.P.R. 271, 274–75 (1985); *Williams v. Dep't of Health & Human Servs.,* 32 M.S.P.R. 259, 261–62 (1987). The law also contemplates the situation in which the agency and Ms. Wainwright find themselves. In *Sink v. United States Postal Serv.* 65 M.S.P.R. 628 (1994), the employee's position had been abolished by the time that Board action was taken. Nonetheless, the Board found that this did not absolve the agency of its duty to re-store the employee to a position that was substantially the same as the one from which the employee was wrongly removed. *Id.* at 634–35.

In this case, the Board was obliged to fashion a corrective order that was not incapable of performance. We assume good faith on the part of the agency in this case, *i.e.,* that it wants to return Ms. Wainwright to the status quo ante. The problem is that the status quo ante no longer exists.

■ In her brief to this court, Ms. Wainwright asserts that there are jobs in the agency for which she is qualified and which would approximate the duties and responsibilities of the previous positions from which she was wrongly ejected. Her former job either no longer exists, or if it does, ANTHC has dictated that it be occupied by someone else. It is incorrect for the Board, as a matter of law, to relieve the agency of its *Kerr* duties, merely because the agency has cooperated in the abolition of Ms. Wainwright's former positions. The agency must attempt to return Ms. Wainwright to some job that reasonably approximates the status quo ante. What and where that job might be are not for this court to determine. The corrective order in this case is legally flawed. The promise of restoration to the previous position of Associate Director is illusory. The Board, perhaps unaware of the transfer by the agency of all of its power over the Viral Hepatitis Program, has excused the agency of any responsibility to seek a return to a situation approximating the status quo ante. This it cannot do.

The fact that the agency cannot deliver a particular job does not relieve it of its duty to provide an analogous one, if one exists. Although the Board and the agency apparently do not work together to fashion corrective orders, the agency

should at least alert the Board to the likelihood that a particular corrective order may have little, if any, possibility of fruition. This did not occur in this case. Compliance with a legally flawed corrective order is hardly satisfactory relief for a violation of the WPA. Absent a showing by the agency that there is *no* currently available job in its control that it can offer to Ms. Wainwright, the agency must be held to be in noncompliance with its duties under *Kerr*.