**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

PRISCILLA A. EBERHARDT,
          Appellant,

      v.

UNITED STATES POSTAL SERVICE,
          Agency.

DOCKET NUMBER
AT-0353-11-0436-B-2

DATE: August 20, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Samuel L. Lovett, Sr.</u>, Atlanta, Georgia, for the appellant.

<u>Earl L. Cotton, Sr.</u>, Esquire, Atlanta, Georgia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the remand initial decision, which dismissed her restoration appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

remand initial decision, and ORDER the agency to provide the appellant with back pay and other benefits.

## BACKGROUND

¶2     The appellant was a Mail Processing Clerk at the agency's North Metro Processing and Distribution Center in Atlanta, Georgia. She suffered a compensable injury in 1990 and worked in several limited-duty assignments until September 25, 2010, when she was sent home for the first time. MSPB Docket No. AT-0353-11-0436-I-1, Initial Appeal File (IAF) (I-1), Tab 5 at 43. On January 5, 2011, the agency offered the appellant a modified job assignment, which she accepted. *Id.* at 25. The appellant returned to work on January 13, 2011. Hearing Recording (HR), File 1 at 8:05 to 8:40.[2] On January 24, 2011, the agency issued the appellant a letter rescinding the January 5 offer and notifying her that there was no work available within her medical restrictions. IAF (I-1), Tab 5 at 23. In its original decision in this matter, the Board found that the appellant made a nonfrivolous allegation that the denial of restoration on January 24, 2011, was arbitrary and capricious on the basis of the appellant's assertion that the work she had been performing was still available and that other employees were performing that work. MSPB Docket No. AT-0353-11-0436-I-1, Remand Order at 5 (May 11, 2012). After the administrative judge again dismissed the appeal for lack of jurisdiction, the Board again vacated the initial decision and remanded the appeal, noting that the administrative judge failed to address the appellant's evidence indicating that the agency may have approved a Casual Hiring Request Form to hire a Postal Support Employee (PSE) to absorb her former duties. The Board indicated that this would have been improper if it occurred because PSEs, unlike employees in the regular workforce, are not

---

[2] A compact disc containing the hearing recording is located at Tab 13 of the initial appeal file, and contains three audio (MP3) files.

guaranteed any minimum amount of work. MSPB Docket No. AT-0353-11-0436-B-1, Remand Order at 3 (June 13, 2013).

¶3 Following a hearing, the administrative judge issued a third initial decision dismissing the appeal for lack of jurisdiction. He found that: (1) the Casual Hiring Request Form was never processed and that no casual or PSE employees were hired pursuant to this request, or any other request, during the relevant period; (2) the PSE employees who were working during the January 13, to January 24, 2011, period performed duties that career employees could not do because of medical restrictions; (3) modified duty assignments were reserved for bid employees who had medical restrictions; (4) the appellant could have bid on these assignments but did not; and (5) as a result of the appellant's failure to bid on an assignment, career employees who were junior to the appellant were awarded modified duty assignments that the appellant could have had. Initial Decision (ID) at 6. Based on these findings, the judge concluded that the appellant failed to establish that the tasks she previously performed were, or currently are, being performed by casual or PSE employees; these duties were being performed by career employees with bid assignments. ID at 6-7.

¶4 In her petition for review, the appellant contends that the non-execution of the Casual Hiring Request Form was irrelevant because the casual and/or PSE employees who were working at the same time she was in January 2011 had been hired previously, and she reiterates her assertions that these employees performed the same duties she was performing during that time and after she was sent home. Petition for Review File, Tab 1.

**ANALYSIS**

The appellant established that the agency's termination of her limited duty assignment was arbitrary and capricious.

¶5 As stated in the Board's previous decisions, the relevant framework in cases such as this for determining whether the denial of restoration was arbitrary and capricious is as follows: (1) are the tasks of the appellant's former modified

assignment still being performed by other employees or are there other tasks within her medical restrictions that were available for her to perform; (2) if so, did those employees lack sufficient work prior to absorbing the appellant's modified duties; (3) if so, did the reassignment of that work violate any other law, rule, or regulation?  *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶ 33 (2012).  If, as the appellant asserted, the duties she was performing during the period from January 13, through January 25, 2011,[3] were also being performed by casual and/or PSE employees, and those employees absorbed the duties she was performing after she was forced out on January 25, then the agency's action sending the appellant home would be arbitrary and capricious.

¶6        The agency's January 5, 2011 limited duty assignment offer indicated that the appellant's duties would be in Operation 030, Manual Letter Operations.  IAF (I-1), Tab 5 at 25.  The appellant testified that, in addition to working in Operation 030, she worked in Operation 896 (handling letters coming off letter sorting machines) and in Operation 074 (casing manual flats).  HR, File 1 at 3:10 to 4:15.  She said she spent most of her time in Operation 896 and that she was doing this sort of work on January 25, when she was called off the floor and her limited duty assignment was terminated.  *Id.* at 8:08 to 8:40.

¶7        The appellant testified that there were a lot of casuals working in January 2011, including in Operations 030, 074, and 896, and that she worked side by side with them during the January 13-25 period.  HR, File 1 at 37:05 to 37:20, 10:15 to 10:55.  She said she knew they were casual or temporary employees because, having been a Postal employee for 25 years, she knew regular employees by sight and saw a lot of unfamiliar faces in January 2011.  She said she asked one of the supervisors who these workers were and was informed that they were casuals.  *Id.* at 10:55 to 11:20.  She said she asked some of the persons

---

[3] Although the agency's letter rescinding the offer of January 5, 2011, was dated January 24, 2011, the appellant testified that she did not receive this letter until the following day while at work.  HR, File 1 at 10:00 to 10:15.

with whom she was working their status, and they told her they were casuals. *Id.* at 11:20 to 11:45. The appellant further testified that both regular employees and casual employees were working overtime during this period. HR, File 1 at 8:45 to 9:00, 12:30 to 12:45, 33:05 to 33:20.

¶8        A maintenance mechanic who was an officer of the American Postal Workers Union testified that a number of casuals were employed at the North Metro facility in January 2011, that they worked on the same Operations as did the appellant, and that the casual employees were still working after the appellant's limited duty assignment was terminated. HR, File 2 at 25:00 to 25:55. She further testified that casuals were used in 2011 to replace regular employees on limited duty assignments and that work was available then (and at the time of the hearing) that the appellant could perform. *Id.* at 27:35 to 27:50.

¶9        The Operations Support Specialist for the North Metro facility during the period in question was the agency's only witness. She testified that PSEs were hired for work on the automation machine that sorts mail or the mechanization machine that sorts flats. HR, File 2 at 59:30 to 59:59. Regarding work records concerning a casual employee who was working at the same time as the appellant in January 2011, she testified that he appears to have been working in the 074 Operation casing manual flats. HR, File 3 at 1:05 to 1:35. She testified that, to her knowledge, the appellant did not work in Operation 074 and that the appellant would not have worked side by side with 074 employees because they worked in a different part of the building than did 030 employees. *Id.* at 3:15 to 3:50. This witness conceded during cross-examination that she is not a supervisor and would not know what specific duties the appellant was assigned. HR, File 3 at 16:20 to 17:00. In addition, although she testified that, to her knowledge, no casual employees were working in Operation 030 at the pertinent time, she conceded that supervisors could move employees among Operations as needed, and she would not know if supervisors assigned casual employees to the 030 Operation. *Id.* at 21:50 to 22:35.

¶10    Based on the above evidence, we conclude that the appellant established by preponderant evidence that casual and/or PSE employees were performing many of the same limited duties she was performing during the period from January 13 to January 25, 2011, and that they continued to do so after her limited duty assignment was terminated that day.[4]    Accordingly, we conclude that the termination of the appellant's limited duty assignment was arbitrary and capricious.

The appropriate remedy is back pay and associated benefits from the date of the improper denial of restoration until the effective date of the appellant's retirement.

¶11    When an agency's denial of restoration has been determined to have been arbitrary and capricious, the Board has ordered the agency to restore the appellant to her former modified assignment.    *See Ashley v. U.S. Postal Service*, 118 M.S.P.R. 231, ¶ 19 (2012), *aff'd in part and vacated in part*, 210 M.S.P.R. 363 (2013) (Table); *Coles v. U.S. Postal Service*, 118 M.S.P.R. 249, ¶¶ 2, 11 (2012).    The appellant retired from her position effective June 20, 2012.    MSPB Docket No. AT-0353-11-0436-B-1, IAF (B-1), Tab 3.    As restoration to duty is no longer possible, the appropriate remedy in this case is to order the agency to provide the appellant back pay and other benefits for the period from January 25, 2011, when the agency arbitrarily and capriciously denied her restoration, until June 20, 2012.

---

[4] We note the administrative judge's statement that the appellant's representative "in his closing statement admitted that the appellant had failed to meet her burden of proof." ID at 7 n.4.  The representative stated that, based on the appellant's credible testimony at the hearing, it was "more than likely" that the appellant's duties were absorbed by casual employees.  HR, File 3 at 36:35 to 36:50.  The representative then added:  "Can we prove that?  No, we can't prove that.  That is a hill that is entirely too steep to climb."  *Id.* at 36:50 to 37:00.  The burden of proof in this case was by a preponderance of the evidence, i.e., "more likely than not."    *See* 5 C.F.R. § 1201.56(c)(2).    The representative was clearly asserting that his client had met this burden of proof.  The "too steep to climb" quotation obviously referred to some burden higher than a preponderance of the evidence.

**ORDER**

¶12        We ORDER the agency to provide back pay and benefits for the period from January 25, 2011, to June 19, 2012. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶13        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶14        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶15        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶16        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline

and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:            _____
                          William D. Spencer
                          Clerk of the Board

Washington, D.C.



| | DFAS CHECKLIST |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.