# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ZIE KONE,

Appellant,

v.

DEPARTMENT OF THE NAVY,

Agency.

DOCKET NUMBERS
PH-0752-13-0217-I-3
PH-0752-13-0413-I-2

DATE: February 27, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Phillip G. Steck, Albany, New York, for the appellant.

Richard Dale, Esquire, Newport, Rhode Island, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1 The appellant has filed a petition for review and the agency has filed a cross-petition for review of the initial decision, which affirmed both the appellant's 30-day suspension for absence without leave (AWOL) and lack of candor and his removal on a single sustained charge of disrespectful conduct. For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the petition for review, DENY the cross-petition for review, and MODIFY the initial decision in order to REVERSE the 30-day suspension and to substitute a 30-day suspension for the removal. Except as expressly MODIFIED by this Final Order, the initial decision is the Board's final decision in these appeals.

## DISCUSSION OF ARGUMENTS ON REVIEW

This consolidated appeal concerns two separate adverse actions taken against the appellant, a Senior Research Scientist in the Advanced Concepts Division of the Sensors and SONAR Department of the Naval Undersea Warfare Center in Newport, Rhode Island. In the first action, the agency proposed to suspend the appellant for 30 days based on charges of: (1) AWOL and failure to follow proper procedures for requesting leave on three specified dates; and (2) lack of candor regarding the appellant's whereabouts on one of those dates. MSPB Docket No. PH-0752-13-0217-I-1, Initial Appeal File (0217-I-1 IAF), Tab 4 at 43-47. The agency sustained two of the three specifications of AWOL under the first charge, declined to sustain the second charge, and sustained the penalty. *Id.* at 28-31. In the second action, the agency removed the appellant on three sustained charges: (1) two specifications of AWOL; (2) four specifications of providing false/misleading information; and (3) a single specification of disrespectful conduct towards his supervisor. MSPB Docket No. PH-0752-13-0413-I-1, Initial Appeal File, Tab 1 at 10-21.

In a single initial decision, the administrative judge sustained both of the agency's actions. MSPB Docket No. PH-0752-13-0413-I-2, Initial Appeal File, Tab 2, Initial Decision (ID). Regarding the 30-day suspension, the administrative judge found that the agency proved only one of the two remaining specifications of AWOL and failure to follow proper procedures for requesting leave, involving the appellant's absence on September 5, 2012, but she sustained the charge based on that single specification. ID at 4-7. Regarding the appellant's removal, the

administrative judge declined to sustain either of the AWOL and providing false/misleading information charges, but she sustained the charge of disrespectful conduct. ID at 7-12. Regarding both actions, the administrative judge determined that the agency had not violated the appellant's rights under the Family and Medical Leave Act of 1993 (FMLA) because she found that the agency had not imposed on him requirements for taking FMLA leave that were more onerous than those required by the FMLA. ID at 12-13. The administrative judge rejected the appellant's affirmative defense of retaliation for engaging in protected equal employment opportunity (EEO) activity, finding that his misconduct outweighed any motive that the agency officials, who she found were aware of the appellant's EEO activity, might have had to retaliate against him for engaging in that activity. ID at 16-18. The administrative judge also found that the appellant's general assertion that the agency violated its own regulations concerning core hours, credit hours, and leave requirements was insufficient to establish his affirmative defense of harmful procedural error. ID at 18-19. Regarding the sustained misconduct, the administrative judge found that the agency established nexus between both actions and the efficiency of the service. ID at 14-15. Lastly, the administrative judge found that the 30-day suspension and removal were both "reasonable penalties based on the seriousness of the AWOL offense and the appellant's disrespectful conduct." ID at 19-21.

¶4    The appellant filed a timely petition for review, the agency filed a cross-petition for review, and the parties both responded to each other's submission. Petition for Review (PFR) File, Tabs 1, 3, 5. As described in the following analysis, we reverse the 30-day suspension because the record reflects that the appellant requested leave for his September 5, 2012 absence within a reasonable period of time appropriate to the circumstances involved, in keeping with the pertinent regulation, 5 C.F.R. § 630.1208(d), as well as with his supervisor's recent past practice. Regarding the removal action, we agree with the administrative judge that the agency established only the disrespectful

conduct charge, but we MODIFY the initial decision to substitute a 30-day suspension because the Board has consistently held that removal is not an appropriate penalty for a single, first instance of such misconduct.

The suspension action

¶5     The appellant argues in his petition for review that the agency approved him for intermittent FMLA leave, specifically covering the dates that the agency charged him with AWOL, including the only specified date for which the administrative judge sustained the agency's AWOL charge, September 5, 2012. PFR File, Tab 1 at 18; *see* MSPB Docket No. PH-0752-13-0217-I-2, Initial Appeal File (0217-I-2 IAF), Tab 24 at 31-34, 73. The appellant testified that he left the office that morning due to debilitating stomach cramps, making it to his car with the help of some of his colleagues and then driving far enough to get off post, where he parked until his cramping subsided. Hearing Transcript (HT) at 584-89. He further testified that he then drove the short distance remaining to his home, where he went straight into a dark room he uses when he has a strong migraine and collapsed. *Id.* at 589.

¶6     The appellant argues in his petition for review that he subsequently provided notice of his need to use his intermittent FMLA leave on an emergency basis in a reasonable amount of time appropriate to the circumstances. PFR File at 18-19. The agency maintains on review that the appellant was AWOL because he failed to request and receive leave approval before departing the office on September 5, as required by the agency's leave instruction. PFR File, Tab 3 at 11-14; *see* 0217-I-2 IAF, Tab 17 at 33. On this point, the agency maintains that, because the appellant was able to drive himself home and to call his daughter, he was therefore able to give notice before he left the office that morning and, because he did not do so, he was AWOL. MSPB Docket No. PH-0752-13-0217-I-3, Initial Appeal File (0217-I-3 IAF), Tab 3 at 20-21, 24.

¶7        Regarding this specification, the administrative judge found that the appellant left the office at 8:30 a.m. on September 5, and did not return that day. ID at 5.  Citing the testimony of the appellant's supervisor, the administrative judge further found that the appellant had personally reported to his supervisor on September 7, that he left the office early on September 5, due to immediate health issues.[2]  ID at 5; HT at 157.  Additionally, the documentary record indicates that the appellant requested leave for September 5, via the agency's time and attendance system, but his supervisor denied the request on September 7, because the appellant sought to use advance credit hours.[3]  0217-I-2 IAF, Tab 24 at 25. Thus, the record reflects that the appellant requested leave for his September 5 absence within 2 days.  Nevertheless, the administrative judge sustained the specification, finding that the appellant was absent on September 5, and that he failed to properly request leave in accordance with the agency's leave requesting instruction for this absence.  ID at 6.

¶8        When, as here, an employee's need for FMLA leave is unforeseeable, and leave cannot be requested in advance, the pertinent regulation requires the employee to "provide notice within a reasonable period of time appropriate to the circumstances involved."  *See* 5 C.F.R. § 630.1207(d).  Although an agency may

---

[2] The appellant may even have reported his September 5 absence the next day.  The administrative judge found that the appellant reported his September 5 departure to his supervisor's secretary when he called her on September 6, to say that he would not be coming in that day, but the testimony cited by the administrative judge actually contradicts that finding, *compare* ID at 5, *with* HT at 157.  Nevertheless, it is clear that the appellant reported his September 5 departure, at the very least, within 2 days. *See* HT at 157; *see also* 0217-I-3 IAF, Tab 3 at 15; PFR File, Tab 3 at 15.

[3] The appellant's supervisor instructed him to resubmit his leave request for September 5.  0217-I-2 IAF, Tab 24 at 25.  The appellant did so, but the resubmitted request, which bears the same leave request form number, 507455, instead grants leave for September 6.  *Id.* at 28.  Nevertheless, as discussed below, because the agency's leave instruction provides that an employee may use leave without pay (LWOP) instead of credit hours for an FMLA-qualifying absence, the type of leave requested was not relevant to whether the appellant's request should have been approved.  *See* 0217-I-2 IAF, Tab 17 at 50-51.

apply its own procedures to leave requests under the FMLA it may not apply a more restrictive policy than that provided under the FMLA and may not deny the employee leave for failure to follow agency procedures.  5 U.S.C. § 6383; *Burge v. Department of the Air Force*, 82 M.S.P.R. 75, 85, (1999); 5 C.F.R. § 1206(e).

¶9        In this matter, regarding the appellant's September 5 absence, not only has the agency applied a more restrictive notice policy than the "reasonable period of time appropriate to the circumstances involved" standard set forth in 5 C.F.R. § 630.1207(d), it also has applied a more stringent standard than it had applied in a similar episode involving the appellant just a few weeks earlier.  Specifically, the appellant's supervisor testified that, in August, the appellant had left the office early under similar circumstances after calling his daughter to bring him home, and, although he acknowledged that the appellant "didn't notify [him] for a couple days later," because the appellant "notified [him] when he could" the supervisor testified "[t]hat was fine."  HT at 157.  Moreover, the reason the appellant's supervisor rejected the appellant's timely leave request—because the appellant apparently sought to use credit hours that had not yet been credited to his account—is an inappropriate basis to deny the request.  The agency's leave instruction specifically provides that an employee on FMLA leave may use LWOP as a matter of right.  *See* 0217-I-2 IAF, Tab 17 at 50-51.  Thus, the appellant, at his option, could use LWOP in lieu of the credit hours he requested for the September 5 absence, making the type of leave requested irrelevant to the analysis.  Accordingly, because we do not sustain the only remaining specification of AWOL, we REVERSE the appellant's 30-day suspension.

The removal action

¶10       Save for the reasonableness of the penalty, we agree with the administrative judge's analysis of this action.  ID at 7-12.  As noted above, the administrative judge declined to sustain the interrelated AWOL and providing false/misleading information charges, which involved the appellant's absences on November 1 and

2, 2012, but she sustained the disrespectful conduct charge. ID at 7-12. Regarding the AWOL and false information charges, the administrative judge found that the appellant provided consistent, transparent, and direct testimony without contradiction as to his whereabouts on November 1, and considering the totality of the circumstances, she found that the appellant requested leave and should not have been considered AWOL for that date. ID at 9. Concerning November 2, the administrative judge found that "the agency failed to present any evidence via testimony or timecards regarding the appellant's AWOL." ID at 9. Thus, the administrative judge found that the agency failed to prove the AWOL charge by preponderant evidence. ID at 9. Regarding the false information charge, again citing the appellant's straightforward testimony, and finding the testimony of the appellant's supervisor "vague and scattered," the administrative judge found that the agency failed to establish by preponderant evidence that the appellant intentionally provided false information on his timecard and she therefore did not sustain the charge of providing false/misleading information. ID at 9-11.

¶11      In its cross-petition for review, the agency argues that, contrary to the administrative judge's finding, the record does not reflect that the appellant requested leave in advance for his short absence on November 1. PFR File, Tab 3 at 9. The appellant testified that he worked almost 9 hours on November 1, well in excess of a full day, and that he left the base around 3:30 p.m. to retrieve some books he needed for an office presentation that evening, which, because of the amount of time he had worked that day, would therefore be covered by credit hours earned and taken that day. HT at 447-49, 599-602, 605, 612. Although the chronology is unclear, the record nevertheless reflects that the appellant did request leave for this absence but that his supervisor denied the request because the appellant selected LWOP instead of requesting to use credit hours for the absence. 0217-I-2 IAF, Tab 24 at 75; HT at 449. Most importantly though, in the remarks section of that denial, the appellant's supervisor specifically told the

appellant that he did not believe that the appellant would even need to take leave if he both worked at least 8 hours that day and was present during core hours, which the supervisor specified as between 9:00 a.m. to 11:00 a.m. and 1:00 p.m. to 3:00 p.m.  0217-I-2 IAF, Tab 24 at 75.  As noted above, the record reflects that the appellant worked more than 8 hours and that he was present during the designated core hours on November 1.  Thus, we agree with the administrative judge that the agency failed to establish that the appellant was AWOL on November 1.

¶12    Regarding the appellant's absence on November 2, the agency maintains that the appellant was absent after 12:00 noon and that his absence was not authorized in advance.  PFR File, Tab 3 at 7-8.  The appellant testified that he left the office at noon with the anticipation of taking his medicine at home, as was his usual practice, but he did not return to the office at 1:00 p.m. that day because he had a bad reaction to his medicine which essentially rendered him unable to contact his supervisor for the rest of the day.  HT at 605-06, 610.  Moreover, the record reflects that the appellant requested leave for this episode on the next business day, Monday, November 5, 2012.  0217-I-2 IAF, Tab 24 at 70-71; HT at 611.  Thus, just as with the September 5, 2012 absence analyzed in the suspension action above, the appellant's need for FMLA-covered leave in this instance was not foreseeable, and we find that the appellant requested leave within a reasonable period of time appropriate to the circumstances involved and therefore was not AWOL.  *See* 5 C.F.R. § 630.1207(d).  Furthermore, we agree with the administrative judge that the appellant's straightforward explanation of the circumstances involved here precludes a finding that he supplied false or misleading information with regard to this episode.  ID at 10-11.

¶13    Regarding the third charge, we agree with the administrative judge that the appellant's November 27, 2012 email to his supervisor was indeed disrespectful.  ID at 11-12; 0217-I-2 IAF, Tab 21 at 69.  In the email, which the appellant testified that he sent because it was the only way he knew to get the attention of

the higher-ups that he copied on it, HT at 472, he essentially accused his supervisor of racism in pursuing his removal and asserted that, in doing so, the supervisor was "starting to make a fool" of himself and others, including the several members of the agency's "Upper Management" whom the appellant copied on the message, 0217-I-2 IAF, Tab 21 at 69. In his petition for review, the appellant explains that he sent the email at issue in response to what he perceived as a "badgering" email from his supervisor and that, at the time, he felt discriminated against on the basis of race and felt justified in challenging him on that basis. PFR File, Tab 1 at 15. The appellant also challenges the penalty, arguing that the agency identified no authority supporting removal in a situation like this, where the only sustained charge is disrespectful conduct towards a supervisor and the record establishes a tense relationship between the parties. PFR File, Tab 5 at 6.

¶14        Although, as the administrative judge acknowledged, the appellant and his supervisor clearly had a contentious relationship, ID at 9, the appellant's frustration does not excuse his conduct. Nevertheless, as noted above, Board law is consistent in finding that removal is not appropriate for a single, first instance of such misconduct. *E.g.*, *O'Neill v. Department of Housing & Urban Development*, 220 F.3d 1354, 1364 (Fed. Cir. 2000) (noting the Board's consistent view that "insolent disrespect toward supervisors so seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once") (quoting *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 316 (1993); *see, e.g.*, *Suggs v. Department of Veterans Affairs*, 113 M.S.P.R. 671, ¶ 15 (2010) (a 30-day suspension is the maximum reasonable penalty for single sustained specification of disrespectful conduct), *aff'd* 415 F. App'x 240 (Fed. Cir. 2011).

## ORDER

¶15      We ORDER the agency to restore the appellant effective May 3, 2013, and to substitute a 30-day suspension for the removal. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

a. Outside earnings with copies of W2's or statement from employer.
b. Statement that employee was ready, willing and able to work during the period.
c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.