## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

## 2016 MSPB 6

Docket No. DC-0752-15-0108-I-1

**Beverly Martin,**

**Appellant,**

**v.**

**United States Postal Service,**

**Agency.**

January 21, 2016

Joseph V. Kaplan, Esquire, Washington, D.C., for the appellant.

Stephen W. Furgeson, Esquire, Landover, Maryland, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which dismissed her suspension appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and REMAND the case for adjudication of the appellant's claims of discrimination and reprisal for equal employment opportunity (EEO) activity. The agency's action is NOT SUSTAINED.

## BACKGROUND

¶2    On July 22, 2011, the parties entered into a settlement agreement that resolved the appellant's pending case before the Equal Employment Opportunity Commission (EEOC), as well as her pending EEO complaints before the agency. Initial Appeal File (IAF), Tab 7 at 108-16.   Pursuant to the terms of the agreement, the appellant promised to retire effective July 31, 2011, decline any agency job offer that required her to relocate from her current residence, and withdraw her EEOC case and other EEO complaints. *Id.*, ¶¶ 4, 7-8.  In return, the agency agreed to "enhance" its contributions to the appellant's retirement for the 3 previous years for an annual salary of $165,000. *Id.*, ¶ 9.  The agreement further provided that, in the event the Office of Personnel Management (OPM) did not approve the enhanced retirement contribution, the agreement would "become inoperative," with the exception of the appellant's agreement to decline any agency job offer that would require her to relocate from her current residence. *Id.*, ¶ 9; *see id.*, ¶ 8.  The agency also agreed to pay the appellant and her attorneys each a lump sum of $25,000, to be held in a trust account until OPM approved the retirement provided for in the agreement, with the proviso that if OPM did not grant approval, both sums would be returned to the agency with interest. *Id.*, ¶¶ 5, 10.

¶3    The agreement did not make explicit whether the appellant would be restored to the status quo ante in the event OPM did not approve the retirement with enhanced contributions.  However, on July 21, 2011, the day before the agreement was executed, agency counsel sent counsel for the appellant an email with the subject line: "This is what happens if retirement is not approved."  IAF, Tab 13 at 4.  In that email, agency counsel stated that, while it was "anticipated" that OPM would approve the retirement provided for in the agreement, in the event it was not approved, the appellant "would be restored as if he/she had not left." *Id.*

¶4     In April 2012, the parties learned that OPM had disapproved the enhanced agency contribution provided for in the agreement.  Petition for Review (PFR) File, Tab 7 at 7; IAF, Tab 10 at 5.  Shortly thereafter, the appellant requested that she be returned to duty.  IAF, Tab 6 at 11, 68, Tab 7 at 106.  On July 31, 2012, the appellant notified the EEOC administrative judge assigned to her case that the agreement had "failed because of mutual mistake of fact," and requested that the case be returned to her active calendar.  IAF, Tab 7 at 105.  Following unsuccessful settlement efforts, the appellant was returned to paid duty status on October 3, 2012.  IAF, Tab 7 at 78-79, Tab 10 at 6.  The agency reinstated the appellant retroactive to July 31, 2011, but without back pay, thus placing her in leave without pay (LWOP) status for the period from July 31, 2011, to October 3, 2012.  IAF, Tab 7 at 78-79, Tab 10 at 6.

¶5     On October 23, 2012, the appellant moved to amend her complaint before the EEOC to include, among other claims, an allegation that the agency had retaliated against her for her EEO activity by refusing to reinstate her retroactively with back pay.  IAF, Tab 7 at 93-100.  On February 13, 2013, the EEOC administrative judge denied that motion, and deemed October 23, 2012, to be the date of first contact regarding the claims contained therein.  *Id*. at 30-31.  On March 22, 2013, after receiving notice of her right to file, the appellant timely filed a new formal EEO complaint with the agency, alleging that the agency retaliated against her by refusing to reinstate her retroactively with back pay and benefits and discriminated against her on the bases of race, sex, and age.  IAF, Tab 1 at 20-24.

¶6     On October 27, 2014, the appellant filed a Board appeal, in which she asserted that she suffered a constructive suspension based on the agency's refusal to provide her back pay for the period from July 31, 2011, to October 3, 2012.  IAF, Tab 1.  She also asserted that the constructive suspension constituted discrimination on the bases of sex and national origin, and reprisal for prior protected EEO activity.  *Id*.  On October 30, 2014, she amended her appeal to

clarify that, in light of the Board's then-recent decision in *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294 (2014), her position was that the agency had instead imposed a nonconstructive suspension by placing her in enforced LWOP status. IAF, Tab 2.  The agency moved to dismiss the appeal for lack of jurisdiction or, in the alternative, as untimely filed.  IAF, Tab 7 at 12, 14-23.  The appellant responded, again citing *Abbott*, and both parties filed supplemental pleadings. IAF, Tabs 10, 12-13, 15.

¶7      Without providing any written notice as to the appellant's burden of proof on jurisdiction, the administrative judge issued an initial decision dismissing the appeal without a hearing.  IAF, Tab 16, Initial Decision.  Applying case law appropriate to constructive suspension appeals, the administrative judge found that the appellant failed to make a nonfrivolous allegation that she was constructively suspended because her decision to retire was knowing and voluntary.  *Id*. at 4-7.  He did not address the appellant's argument that the agency had nonconstructively suspended her by placing her in LWOP status without her consent.

¶8      On petition for review, the appellant argues that the administrative judge erred in finding that her July 31, 2011 retirement was voluntary because the settlement agreement was based on mutual mistake and thus was void ab initio. PFR File, Tab 3 at 5, 11-17.  She further argues that she did not voluntarily agree to the agency's unilateral imposition of LWOP in the event the settlement agreement was rendered void.  *See id*. at 17-18.  The agency has responded, PFR File, Tab 7, and the appellant has filed a reply, PFR File, Tab 8.[1]

[1] The agency's motion for leave to file a response to appellant's reply to the agency's response to the petition for review is denied.  PFR File, Tab 10.  Such a pleading is not generally allowed on review, absent approval by the Clerk of the Board based on a party's motion describing the nature of and need for the pleading.  *See* 5 C.F.R. § 1201.114(a)(5).  We are not persuaded by the agency's unsupported assertion that the appellant's reply is "replete with errors of law and facts."  PFR File, Tab 10 at 1.  Nor

**ANALYSIS**

¶9     The placement of an employee in enforced leave status for more than 14 days constitutes an appealable suspension within the Board's jurisdiction. *Abbott*, 121 M.S.P.R. 294, ¶ 10; *see* 5 U.S.C. §§ 7512(2), 7513(d), 7701(a).  We have held that when an agency reinstates an appellant following a negative retirement determination by OPM, and retroactively places him in LWOP status without her consent for the period during which the retirement inquiry was pending, her placement in LWOP status constitutes such an appealable suspension.  *Bannister v. General Services Administration*, 42 M.S.P.R. 362, 364, 368 (1989).  In *Bannister*, we described the agency's unilateral placement of the appellant in LWOP status as a "constructive suspension."  *Id*. at 368.  However, we have since clarified that the term "constructive suspension" is properly reserved for appeals in which an appellant alleges that leave that appeared to be voluntary was not.  *Abbott*, 121 M.S.P.R. 294, ¶¶ 6-11.  Here, as in *Abbott*, the appellant's retroactive placement in LWOP status was not even ostensibly voluntary.  *See id.*, ¶ 9.  Hence, it was error for the administrative judge to apply case law applicable to appeals where the voluntariness of leave is at issue.  *See id*., ¶ 10.  Because the agency placed the appellant in LWOP status, without her consent, for a period of 430 days, we find that she suffered an appealable nonconstructive suspension within the Board's jurisdiction.[2]

¶10     We further find that her appeal was timely filed.  Our regulations provide that when an appellant seeks to raise an allegation of prohibited discrimination concerning an action that is otherwise appealable to the Board, she may either file

do we believe that further briefing is necessary for our understanding of the case, or for "justice and fair play," as claimed.  *Id.*

[2] In so finding, we do not decide whether the appellant is correct in her contention that the settlement agreement was rendered void ab initio.  We consider the agreement only to note the absence of any term that might be construed as expressing the appellant's consent to retroactive placement in LWOP status.

a timely complaint of discrimination with the agency, or file an appeal with the Board within 30 days after the effective date of the agency action being appealed. 5 C.F.R. § 1201.154(a).  If the appellant has elected to file a complaint with the agency, the Board appeal must be filed within 30 days after the employee receives the final agency decision on the discrimination issue or, if the agency has not resolved the matter or issued a final decision on the complaint within 120 days, the appellant may appeal the matter directly to the Board at any time after the expiration of 120 calendar days.  5 C.F.R. § 1201.154(b).  Here, the appellant filed a timely EEO complaint alleging reprisal and discrimination regarding her suspension, and filed her Board appeal after 120 days had elapsed without a final agency decision being issued on her complaint.

¶11    As for the merits of the appeal, because a tenured Federal employee has a property interest in continued employment, the agency was prohibited from suspending the appellant without providing the due process required under the Fifth Amendment.  *See Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 13 (2014).  Due process requires, at a minimum, that an employee being deprived of her property interest be provided an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id*., ¶ 16 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  Here, the agency did not provide the appellant a hearing of any kind, either before or after it retroactively suspended her.  Consequently, its action cannot be sustained.

¶12    Finally, because the appellant's suspension is an appealable action, she is entitled to a decision on her claim that the agency's action constituted reprisal for her prior EEO activity and discrimination claims.  *See* 5 U.S.C. § 7702(a)(1). The case therefore must be remanded for adjudication of the appellant's reprisal and discrimination claims, including her requested hearing.  *See Aldridge v.*

*Department of Agriculture*, [111 M.S.P.R. 670](#), ¶ 23 (2009); *Totten v. U.S. Postal Service*, [68 M.S.P.R. 255](#), 257 (1995).[3]

## ORDER

¶13    The initial decision is REVERSED, and the case is REMANDED to the Washington Regional Office for further adjudication.

¶14    Pending the remand proceedings on the appellant's reprisal and discrimination claims, we ORDER the agency to cancel the suspension action and retroactively place the appellant in pay status for the period from July 31, 2011, to October 3, 2012.  *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶15    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶16    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* [5 C.F.R. § 1201.181](#)(b).

---

[3] The Board's regulations provide that a request for attorney fees must be made within 60 days after issuance of a final decision.  [5 C.F.R. § 1201.203](#)(d).  In this case, the time limit for filing such a request will not begin to run until the decision on remand is final.  *See Aldridge*, [111 M.S.P.R. 670](#), ¶ 23 n.4; *Totten*, 68 M.S.P.R. at 257 n.2.

¶17     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶18     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.



| | **DFAS CHECKLIST** |
| --- | --- |
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)
    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.